## Jimmy Dale Lowe

## v.

## Commonwealth of Virginia

Record No. 841618

November 27, 1985

Present: All the Justices

*Robert H. Blodinger (Craig G. Van de Castle,* on brief), for appellant.

*Marla Lynn Graff, Assistant Attorney General (William G. Broaddus, Attorney General,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The question for decision in this criminal case is the legality of a roadblock established for the purpose of checking the sobriety of motor vehicle operators.

On Saturday, January 28, 1984, at 1:55 a.m., defendant Jimmy Dale Lowe was operating a motor vehicle south on Avon Street across a bridge in the City of Charlottesville. The city police had established a roadblock at the south end of the bridge about three hours earlier. The roadblock was announced to motorists by a sign, stating "License and Sobriety Checkpoint, Prepare to Stop," located on the crest of the bridge facing southbound traffic.

After crossing the bridge, defendant proceeded into the road-block and stopped where city police patrolman Lawrence B. Brown was standing. Brown had not observed defendant drive erratically nor was there any other indication that defendant was driving while intoxicated. Brown asked for defendant's operator's license, which defendant handed to Brown. While talking to defendant to verify his address, the officer noticed defendant's eyes "were very red" and Brown smelled the odor of alcohol about defendant's person. The officer directed defendant to drive his vehicle "around the corner off of the bridge" to enable other vehicles

to come to the checkpoint. The officer next asked defendant to step out of his vehicle and to perform three dexterity tests, which defendant failed. Defendant then was arrested for driving under the influence of alcohol (DUI). *See* Code § 18.2-266. He elected to have his breath analyzed. A police van was located at the scene for the purpose of administering such tests. The test showed that defendant's blood alcohol content was .17, an amount which raises a presumption of intoxication. *See* Code § 18.2-269.

Defendant was convicted of the charge in the general district court and he appealed to the circuit court. Prior to trial in the circuit court, defendant filed a motion to suppress all evidence derived from the stopping of his vehicle on the ground that his constitutionally protected right against unreasonable seizures was violated. Sitting without a jury, the circuit court heard the evidence on the motion together with evidence on the merits of the case. The court denied the motion and found defendant guilty as charged, giving rise to this appeal.

Specifically, the issue before us is whether the seizure of defendant under the circumstances of this roadblock was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution, and art. I, § 10 of the Constitution of Virginia.[1]

---

[1] The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Local law enforcement personnel are subject to the requirements of the Fourth Amendment under the due process clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

Article I, § 10 of the Virginia Constitution provides:

"That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted."

The Virginia requirements, under our constitution and the statutes implementing the constitutional provision, are "substantially the same as those contained in the Fourth Amendment." A. Howard, I *Commentaries on the Constitution of Virginia* 182 (1974). *See Tri-Pharmacy, Inc.* v. *United States*, 203 Va. 723, 728, 127 S.E.2d 89, 92 (1962), *cert. denied*, 371 U.S. 962 (1963); *Zimmerman* v. *Town of Bedford*, 134 Va. 787, 801-02, 115 S.E. 362, 366 (1922). The Fourth Amendment is but declaratory of the common law on the subject. *McClannan* v. *Chaplain*, 136 Va. 1, 14, 116 S.E. 495, 498-500 (1928). Thus, we will focus on the Fourth Amendment in discussion of the issue presented.

■ The applicable constitutional provisions protect, of course, only expectations of privacy that are reasonable. *Katz* v. *United States*, 389 U.S. 347, 351-53 (1967). Nevertheless, a person "operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation." *Delaware* v. *Prouse*, 440 U.S. 648, 662 (1979). And stopping a motor vehicle and detaining the operator constitute a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention is quite brief. *Leeth* v. *Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982), citing *Prouse*, 440 U.S. at 653. Therefore, the pertinent inquiry here is whether defendant's detention, when he was stopped at the initial checkpoint at the south end of the bridge, was constitutionally unreasonable.

During the last decade, the Supreme Court of the United States has decided four cases which impact the constitutional validity of roadblock stops of vehicles. *United States* v. *Brignoni-Ponce*, 422 U.S. 873 (1975) (random stops of vehicles near Mexican border to detect entry of illegal aliens ruled invalid); *United States* v. *Martinez-Fuerte*, 428 U.S. 543 (1976) (permanent checkpoint stops to stem flow of illegal alien traffic from Mexico approved); *Delaware* v. *Prouse, supra*; and *Brown* v. *Texas*, 443 U.S. 47 (1979). Although the Court has not ruled directly on the validity of roadblock seizures employed to detect drunk drivers, it has fixed definite limitations on the right of police to maintain roadblocks under the Fourth Amendment. Basically, law enforcement personnel may not stop motorists in a wholly random and discretionary manner unless there is, at least, articulable and reasonable suspicion either that the operator is unlicensed, the vehicle is unregistered, or the operator or other occupant is subject to seizure for violation of law. The Court in *Prouse*, however, in striking down a random, discretionary stop made to check license and registration, said in dicta:

"This holding does not preclude the . . . States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason

alone have their travel and privacy interfered with at the un-bridled discretion of police officers." 440 U.S. at 663.

*Cf.* Virginia Code § 46.1-7(c) (requiring operators of vehicles to stop upon command of a police officer to exhibit drivers' licenses).
▮ Subsequently, the Court in *Brown* v. *Texas, supra*, stated that the reasonableness of seizures, less intrusive than traditional arrests, depends on a balancing test. In declaring the application of a Texas stop-and-identify statute unconstitutional, the Court set forth three criteria by which the validity of such seizures should be gauged. There must be a weighing of (1) the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty. 443 U.S. at 50-51. The Court, in *Brown*, noted that a "central concern" in balancing the forego-ing competing considerations has been to make certain that "an individual's reasonable expectation of privacy is not subject to ar-bitrary invasions solely at the unfettered discretion of officers in the field." *Id.* at 51. Thus, the Court said, "the Fourth Amend-ment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limita-tions on the conduct of individual officers." *Id.*
▮ The evidence in this case shows that defendant was not stopped because the police suspected that a crime had been, was being, or was about to be committed. Consequently, we must ex-amine the city's plan for maintaining this DUI roadblock to deter-mine whether defendant was stopped pursuant to a practice em-bodying neutral criteria.[2]

---

[2] The public interest in eliminating the drunken driver from the highways is overwhelm-ing. "The carnage caused by drunk drivers is well documented and needs no detailed reci-tation here." *South Dakota* v. *Neville*, 459 U.S. 553, 558 (1983). But a number of state courts have determined that roadblocks used by police to detect drunk drivers run afoul of the Fourth Amendment, while other jurisdictions have found that such roadblocks do not offend the constitutional provisions.

For state cases finding such roadblocks invalid, see *Jones* v. *State*, 459 So.2d 1068 (Fla. Dist. Ct. App. 1984); *People* v. *Bartley*, 125 Ill. App.3d 575, 466 N.E.2d 346 (1984); *State* v. *McLaughlin*, 471 N.E.2d 1125 (Ind. Ct. App. 1984); *State* v. *Koppel*, 499 A.2d 977 (N.H. 1985); *State* v. *Smith*, 674 P.2d 562 (Okla. Crim. App. 1984); *State* v. *Ol-gaard*, 248 N.W.2d 392 (S.D. 1976); *Webb* v. *State*, 695 S.W.2d 676 (Tex. Ct. App. 1985).

According to the evidence, the first roadblock under the Charlottesville plan was set up on December 30, 1983, about a month before defendant's arrest. The city was asked to establish such a plan by representatives of the Virginia Alcohol Safety Program, working in conjunction with the federal Department of Transportation. The Charlottesville plan was adopted after extensive research. The police officials considered, among other things, the law on the subject, the safety of the police, and the safety of motorists. In addition, the police department analyzed the locations within the city where there had been drunk-driving arrests and alcohol-related accidents in order to determine the places where the checkpoints should be established.

The police officers to be assigned to the roadblocks were given 24 hours of training by outside experts and a manual of procedures was prepared entitled "Charlottesville Driver's License & Sobriety Checkpoint Program." The manual's preface, over the signature of the Chief of Police, states that the project was intended "to reduce the number of alcohol-related motor vehicle accidents" by using "license and sobriety checkpoints to aid in the detection and apprehension of drivers who are intoxicated or driving when not properly licensed." The project, according to the manual, "is expected to increase public perception that drunk drivers will be caught and arrested, and will serve as a deterrent to the potential drunk driver."

Topics covered in the procedural manual include criteria for selection of a particular area for designation as a checkpoint site; provisions that a high-ranking police officer make the daily assignment of a previously designated site for operation of a roadblock and that such officer assign the personnel to work a particular roadblock; specific provisions for the manner in which a roadblock site should be manned and equipped; and detailed routine for bringing traffic to a stop, interviewing motorists, and evaluation of an operator suspected of driving under the influence.

---

For state cases approving DUI roadblocks, see *State* v. *Super. Ct. In & For County of Pima*, 691 P.2d 1073 (Ariz. 1984); *People* v. *Conway*, 135 Ill. App.3d 887, 482 N.E.2d 437 (1985); *State* v. *Garcia*, 481 N.E.2d 148 (Ind. Ct. App. 1985); *State* v. *Deskins*, 673 P.2d 1174 (Kan. 1983); *Little* v. *State*, 300 Md. 485, 479 A.2d 903 (1984); *Commonwealth* v. *Trumble*, 396 Mass. 81, 483 N.E.2d 1102 (1985); *State* v. *Coccomo*, 177 N.J. Super. 575, 427 A.2d 131 (1980); *People* v. *Scott*, 473 N.E.2d 1, 63 N.Y.2d 518, 483 N.Y.S.2d 649 (1984); *State* v. *Martin*, 496 A.2d 442 (Vt. 1985).

Testimony showed that extensive media publicity about the project took place before the first roadblock was set up on December 30th and that the few roadblocks that followed were widely publicized before the instant case arose. No publicity was given to the specific location of a checkpoint before it was established. The police were aware, however, that such information was shortly possessed by proprietors of local bars and restaurants who passed it to their customers.

At the time of defendant's arrest, five uniformed police officers, wearing reflector vests, were assigned to the scene. The area and the warning sign were well-lighted. There were two marked police vehicles present with red lights flashing. The geography of the site permitted adequate space for the momentary initial detention to check licenses and to afford space for vehicles, whose operators required further evaluation, to pull aside. The officers at the checkpoint had no discretion regarding which vehicles to stop; every southbound vehicle was halted. If congestion occurred, vehicles were permitted to move through the checkpoint until the congestion cleared. The police endeavored to detain a motorist no more than 30 seconds for the license check.

During the brief time the plan had been in effect prior to trial, the police noted favorable results of the roadblock procedure. More motorists were being identified who had license violations and other traffic infractions than had been detected using traditional patrol procedures. In addition, drunk drivers were being detected at lower blood alcohol content levels than had previously been identified using routine patrol methods.

■ We conclude that the trial court correctly ruled that the seizure of defendant upon the initial stop at the checkpoint in question was constitutionally valid. Balancing the State's strong interest in protecting the public from the grave risk presented by drunk drivers, against the minimal inconvenience caused motorists approaching the roadblock, we hold that the action of the police in this case was not an impermissible infringement upon defendant's reasonable expectation of privacy. The Charlottesville system is safe and objective in its operation, employs neutral criteria, and does not involve standardless, unbridled discretion by the police officer in the field, which was condemned in *Prouse.*

Even though DUI roadblocks had been in operation only for a brief period, tangible results appeared that were not evident under traditional methods of detection. Moreover, the deterrent effect of

such a highly publicized program is obvious; such a visible project is bound to increase the perceived risk of arrest in the minds of those drunk drivers who are never arrested.

Accordingly, the defendant's conviction will be

*Affirmed.*