454 S.E.2d 758

**Ricky Lee BROWN**

v.

**COMMONWEALTH of Virginia.**

Record No. 1570–93–2.

Court of Appeals of Virginia,
Richmond.

March 14, 1995.

William B. Kerkam, III, Richmond (Scott W. Lechner, Bremner, Baber & Janus, on briefs), for appellant.

Marla Lynn Graff, Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on brief), for appellee.

Present: COLEMAN and BRAY, JJ., and HODGES, Senior Judge.

COLEMAN, Judge.

This appeal challenges the validity of a DUI checkpoint, which led to the appellant, Ricky Lee Brown, being convicted for third offense of driving under the influence of alcohol. Appellant contends that the trial court erred in denying his motion to suppress the evidence of his intoxication obtained as a result of the checkpoint stop. Because the checkpoint did not conform to the guidelines adopted for the operation of DUI checkpoints and was, therefore, invalid, we hold that the warrantless stop of the appellant during the period of noncompliance contravened the protections of the Fourth Amendment. Accordingly, we reverse the conviction and dismiss the charge.

Brown was arrested at a sobriety checkpoint on Route 33 in Saluda for a third offense of driving while under the influence of alcohol in violation of Code § 18.2–266. At a suppression hearing, the trial court denied the appellant's motion to suppress evidence based on the argument that the Virginia State troopers did not adhere to their operational guidelines for the checkpoint.

The checkpoint was governed by Virginia State Police Memo 89–20, which states in relevant part:

TRAINING MANUAL INSERT
VOLUME II
89–20

DEPARTMENT OF STATE POLICE

Richmond, Virginia

October 26, 1989

MEMO—1989—NO. 20

TO: All Members

FROM: Colonel R.L. Suthard

SUBJECT: *Traffic Checking Detail/DUI Sobriety Checkpoint Plan*

Memo—1987—No. 3 is canceled

I. *PURPOSE* The purpose of this memo is to provide policy and procedures for the conduct of Traffic Checking Details/DUI Sobriety Checkpoints by members of the Department of State Police.

II. *OBJECTIVES* The objective of this memo is to ensure conformance with constitutional requirements concerning the use of Traffic Checking Details/DUI Sobriety Checkpoints.

III. *POLICY* The Department of State Police members authorized to conduct Traffic Checking Details/DUI Sobriety Checkpoints *shall do so in compliance with this memo.*

\* \* \* \* \* \*

VI. *DUI SOBRIETY CHECKPOINTS*

2. *CHECKPOINT OPERATION:*

a. At the direction of the Division Commander, Area First Sergeants shall prepare Area Operational Plans and submit for Divisional approval. Area Operational Plans shall address the following points:

1. Date, hours of operation, and location of each checkpoint;

2. Contingency plans for each checkpoint which shall include:

a. *An alternate location for use in the event safety considerations prevent checkpoint operations at the intended location.* Safety consideration may include

circumstances such as extremely heavy traffic due to some unforeseen event or a major accident at or near the checkpoint location.

(Emphasis added).

Pursuant to the Department memo, an area operational plan describing field operating procedures for the local checkpoint was submitted for divisional approval. The plan, in relevant part, stated:

A DUI Sobriety Checkpoint will be conducted on the night of November 7, 1992, between 9:00 p.m. and 1:00 a.m. (November 8, 1992) as determined by the Sergeant in Charge. *The primary location* will be Route 227, northside of intersection of Route 33 in Middlesex County.

\* \* \* \* \* \*

*An alternate checkpoint* will be on Route 33 at Saluda in Middlesex County directly in front of the Department of Transportation's Residency office. North and south bound traffic will be checked. This site was selected on the basis of DUI arrests, and recommended by the Area Troopers as an area used frequently by impaired drivers.

\* \* \* \* \* \*

*This plan is submitted in compliance with MEMO—1989— No. 20, paragraph VI, DUI Sobriety Checkpoints.*

(Emphasis added). The trial court determined that the officers conducting the alternate checkpoint at Saluda "substantially complied" with Memo 89–20.

"To ensure that an individual's expectation of privacy is not subjected to arbitrary invasion solely at the unfettered discretion of police officers in the field, seizures at roadblocks must be carried out pursuant to plans embodying explicit, neutral limitations on the conduct of the individual officer." *Hall v. Commonwealth,* 12 Va.App. 972, 973, 406 S.E.2d 674, 675 (1991). *See Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Simmons v. Commonwealth,* 238 Va. 200, 202–03, 380 S.E.2d 656, 658 (1989); and *Lowe v. Com-*

*monwealth,* 230 Va. 346, 350, 337 S.E.2d 273, 276 (1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986).

"To allow the [police] to do anything short of complying in full with [their] own guidelines would inject an element of discretion into the [checkpoint] procedures and thus undercut the very foundation upon which the [checkpoint] seizure is constitutionally justified." *Commonwealth v. Anderson,* 406 Mass. 343, 547 N.E.2d 1134, 1137–38 (1989) (holding that the stop of driver fifteen minutes after scheduled termination of roadblock is unconstitutional). *See also State of Hawaii v. Fedak,* 9 Haw.App. 98, 825 P.2d 1068, 1071–72 (1992) (holding that moving a roadblock because of traffic congestion to authorized location by unauthorized officer is unconstitutional).

Memo 89–20 directed that each plan submitted "shall" include an "alternative location for use *in the event safety considerations prevent* checkpoint operations at the intended location." (Emphasis added). The Middlesex County State Trooper's plan designated Route 33 at Saluda "as an alternate checkpoint." Thus, as provided by Memo 89–20, the officers were authorized to utilize the "alternate" location, Route 33 at Saluda, only when *safety considerations* "prevent[ed]" continued operation at the primary checkpoint. However, Trooper Thomas, a trooper involved in the operation at the checkpoint on the evening when the appellant was stopped, testified that the checkpoint was moved because of "light traffic" and "lack of any arrests," reasons not specified in the guideline.

By moving the roadblock for unauthorized reasons, troopers exercised their discretion in determining why and when a DUI checkpoint would be operated on Route 33 at Saluda. The decision by the troopers is the type of "unconstrained exercise of discretion" that violates the Fourth Amendment guarantees against stopping and detaining private citizens without probable cause or reasonable suspicion of criminal activity or other justifiable reasons. *See Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401. "Since the Commonwealth's guidelines regulating roadblocks have been held to supply the 'reasonableness' in these seizures that lack the usual probable cause or individualized

suspicion requirements which ordinarily safeguard citizens from arbitrary government intrusion, we believe the [safest] course is to require the Commonwealth to follow its own rules." *Anderson,* 547 N.E.2d at 1138. We reject the Commonwealth's argument that the police substantially complied with the department's guidelines; relocating the roadblock for unauthorized reasons constituted noncompliance with the guidelines. Accordingly, the stop was an illegal seizure, and the evidence of intoxication obtained as a result should have been suppressed.

We, therefore, reverse the conviction and dismiss the charge.

*Reversed and dismissed.*