Tuesday          5th

May, 1998.


Elvin William Sheppard,                                    Appellant,

 against        Record No. 1335-96-3
                Circuit Court Nos. CR95000976 and CR95000977

Commonwealth of Virginia,                                  Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Baker, Benton, Coleman,
      Willis, Elder, Bray, Annunziata, Overton and Bumgardner

            Wayne T. Baucino, Assistant Public Defender
            (Vikram Kapil, Assistant Public Defender, on
            brief), for appellant.

            Leah A. Darron, Assistant Attorney General
            (Richard Cullen, Attorney General, on
            brief), for appellee.


        A divided panel of this Court affirmed the judgment of the

trial court.  See Sheppard v. Commonwealth, 25 Va. App. 527, 489

S.E.2d 714 (1997).  We stayed the mandate of that decision and granted

rehearing en banc.

        Upon rehearing en banc, the judgment of the trial court is

affirmed without opinion by an evenly divided Court.

        The Commonwealth shall recover of the appellant the costs in

this Court, which costs shall also include an additional fee of $200

for services rendered by attorneys of the Public Defender's office on

the rehearing portion of this appeal, in addition to counsel's

necessary direct out-of-pocket expenses.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Tuesday                    14th

　　　October, 1997.


Elvin William Sheppard,                                    Appellant,

　against　　　　Record No. 1335-96-3
　　　　　　Circuit Court Nos. CR95000976 and CR95000977

Commonwealth of Virginia,                              Appellee.


Upon a Petition for Rehearing En Banc

Before the Full Court


On September 22, 1997 came the appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the judgment rendered herein on September 9, 1997, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on September 9, 1997 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:
Deputy Clerk

Present:  Chief Judge Moon, Judges Coleman and Willis
Argued at Salem, Virginia


ELVIN WILLIAM SHEPPARD
                                              OPINION BY
v.        Record No. 1335-96-3     JUDGE JERE M. H. WILLIS, JR.
                                           SEPTEMBER 9, 1997
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
                      Charles M. Stone, Judge

          Wayne T. Baucino, Assistant Public Defender
          (Vikram Kapil, Assistant Public Defender, on
          briefs), for appellant.

          Leah A. Darron, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Elvin William Sheppard was a passenger in an automobile that
was stopped by the police at a license checking roadblock.  He
was convicted of possession of cocaine and possession of
marijuana discovered by the police upon search of the automobile.
 On appeal, he contends that the roadblock was established
unconstitutionally, that the seizures of the automobile and of
his person were therefore unlawful, and that the trial court
erred in refusing to suppress the evidence discovered upon the
search of the automobile.  We find no error and affirm the
judgment of the trial court.

     Prior to Sheppard's arrest, the Martinsville Police
Department adopted General Order Number 3-31 governing traffic

checkpoints "to enforce driver's license and vehicle registration laws" and to address "all other violations of law coming to the attention of officers conducting the checking detail." The plan required that checkpoints should be located at sites set forth on a list attached to the plan as "Appendix A" and that checkpoints would be conducted "for no less than [thirty] minutes or for no more than two hours." The plan set forth rules governing the number of officers to be present, the officers' attire, emergency lights and flares to be used, location of emergency vehicles on the scene, removal of detained vehicles from traffic, and the number of cars to be stopped.

Charles E. Long testified that at the time of Sheppard's arrest, he was Lieutenant of Criminal Investigations, Services Division, of the Martinsville Police Department. He testified that the police "were receiving numerous complaints about the Moss Street area involving drugs, speeders, people driving without driver's license, suspensions . . . ." Lieutenant Long decided to set up a "roadcheck" on Moss Street and assigned officers to Moss Street for that purpose. The Moss Street location was not included in Schedule A of General Order Number 3-31. However, the roadcheck complied with that order in every other respect. Lieutenant Long did not participate in the roadcheck personally, but acted only in a supervisory capacity.

Sheppard was a passenger in an automobile that was stopped at the Moss Street roadcheck. The driver did not have an

operator's license and was charged with that offense.  He gave the police permission to search the automobile.  The police discovered cocaine and marijuana, and Sheppard was charged with possession of those substances.

Sheppard moved the trial court to suppress the cocaine and marijuana on the ground that their discovery resulted from an unconstitutional search and seizure.  He argued that because the establishment of the Moss Street checkpoint deviated from General Order Number 3-31, the conduct of the checkpoint was an exercise in unbridled police discretion and was constitutionally impermissible.  The trial court denied the motion, admitted the evidence, and convicted Sheppard on both counts.

Code § 46.2-103 provides, in pertinent part:
Except as prohibited by § 19.2-59, on his request or signal, any law-enforcement officer who is in uniform or displays his badge or other sign of authority may:

1.  Stop any motor vehicle, trailer, or semi-trailer to inspect its equipment, operation, . . . .

Code § 46.2-104 provides, in pertinent part:

The owner or operator of any motor vehicle, trailer, or semi-trailer shall stop on the signal of any law-enforcement officer who is in uniform or shows his badge or other sign of authority and shall, on the officer's request, exhibit his registration card, driver's license, learner's permit, or temporary driver's permit . . . .

The statutory right of a law enforcement officer to stop a

motor vehicle and the obligation of a motor vehicle operator to submit to such a stop for a license or registration inspection are circumscribed by the decision of the United States Supreme Court in Delaware v. Prouse, 440 U.S. 648 (1979), holding unconstitutional the random stopping of motor vehicles, other than upon the basis of probable cause or reasonable suspicion of criminal conduct.  The Court ruled that a person "operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation."  Id. at 662.  However, the Court went on to say:

> This holding does not preclude the States from developing methods for stopchecks that involve less intrusion or that do not involve the unconstrained exercise of discretion.  Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.  We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.

Id. at 663.

In Brown v. Texas, 443 U.S. 47 (1979), the United States Supreme Court set forth a balancing test for determining the validity of traffic stops not based upon probable cause or reasonable suspicion of criminal activity.  The test involves three criteria:  (1) the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the

7

public interest, and (3) the severity of the interference with individual liberty.  Id. at 50-51.  Noting the central constitutional concern that "an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field," the Court said, "the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers."  Id. at 51.  See Lowe v. Commonwealth, 230 Va. 346, 350, 337 S.E.2d 273, 275-76 (1985).

Lowe involved an arrest made at a license and sobriety checkpoint conducted pursuant to Charlottesville's checkpoint plan.  Analyzing the components of the plan under the criteria set forth in Brown, the Supreme Court held:

> Balancing the State's strong interest in protecting the public from the grave risk presented by drunk drivers, against the minimal inconvenience caused motorists approaching the roadblock, we hold that the action of the police in this case was not an impermissible infringement upon defendant's reasonable expectation of privacy.  The Charlottesville system is safe and objective in its operation, employs neutral criteria, and does not involve standardless, unbridled discretion by the police officer in the field, which was condemned in Prouse.

Lowe, 230 Va. at 352, 337 S.E.2d at 277.

8

In *Simmons v. Commonwealth*, 238 Va. 200, 380 S.E.2d 656 (1989), the Supreme Court considered a license and registration checkpoint established and conducted by two state troopers on their own initiative.  The troopers stopped and inspected every vehicle passing through the checkpoint.  Holding the checkpoint to be constitutionally impermissible, the Supreme Court said:

> We do not read *Prouse* to stand for the proposition that stopping all traffic at a roadblock constitutes sufficient restraint on the exercise of discretion by police officers to transform the stop into a constitutionally valid roadblock.  While this approach may eliminate the constitutional vice inherent in a random spot check or stop and therefore be a preferred practice, . . . the roadblock also must be undertaken pursuant to an explicit plan or practice which uses neutral criteria and limits the discretion of the officers conducting the roadblock.  The evidence in this case establishes that the decision to establish the roadblock as well as its location and duration was solely within the discretion of the troopers.  No advance approval or authorization from any supervisor or superior officer was required to set up the roadblock.

*Id.* at 203–04, 380 S.E.2d at 658–59 (footnote omitted).

The seizure of the vehicle in which Sheppard was riding did not derive from a random stop forbidden by *Prouse*.  The Martinsville plan satisfied the criteria set forth in *Brown*, conformed to the standards approved in *Lowe*, and satisfied the requirement of *Simmons*.  The officers conducting the Moss Street checkpoint complied with the Martinsville plan in every respect.

9

The issue before us is whether the sole deviation from that plan, the selection by Lieutenant Long of a checkpoint site not included in Schedule A, was of sufficient significance to render the checkpoint unreasonable and constitutionally impermissible. We hold that it did not.

Although Lieutenant Long selected the site, he did not participate in conducting the checkpoint. He was not an officer in the field. His involvement was altogether in a supervisory or administrative capacity. Thus, in no respect, was the establishment or conduct of the checkpoint left to the unbridled discretion of field officers.

Nothing in the record suggests that Lieutenant Long's decision to establish the checkpoint involved, in any way, an effort to target a specific person or a specific group of people. His decision was based on citizen complaints of unlawful activity at the Moss Street location. His decision addressed the unlawful situation, not any person or group of people. His purpose was to quell unlawful activity and to control a trouble spot, employing neutral criteria. The location of the checkpoint on Moss Street imposed no greater intrusion on the privacy of the general traveling public than would have been imposed had the checkpoint been located at a Schedule A site. Thus, we hold that the mere fact that the Moss Street location was not included in Schedule A, effected a minor, insubstantial deviation from compliance with the Martinsville plan, and did not render the

10

checkpoint constitutionally impermissible.

The judgment of the trial court is affirmed.

Affirmed.

Coleman, J., dissenting.


In my opinion, the traffic checking roadblock that the Martinsville police set up on Moss Street significantly deviated from the city's roadblock plan. The roadblock was not conducted at a pre-approved location as specified in General Order 3-31, the plan did not authorize a supervisor to designate an alternate site based upon public safety concerns, and the roadblock was established for general crime detection purposes and not for legitimate operator licensing and vehicle registration checking purposes. Moreover, the roadblock at the Moss Street site was not based on objective criteria; rather, it was established on an ad hoc basis in response to citizen complaints about illegal activity in the area. For these reasons, I would hold that the roadblock did not satisfy the reasonableness requirements of the Fourth Amendment. The manner in which the roadblock was established did not remove the officers' unfettered discretion as to who could be stopped. Accordingly, because the roadblock did not, in my opinion, satisfy Fourth Amendment requirements, the stop of the vehicle in which the defendant was a passenger and the seizure of drugs from him was unlawful. Accordingly, I respectfully dissent from the majority opinion.

                                I.

The site for the roadblock was selected by Lieutenant Long, who was the officer in charge of the Criminal Investigations Services Division. Long testified that he had received numerous

12

complaints, from one citizen in particular, regarding drugs, speeding, and people driving in the Moss Street area without licenses or on suspended licenses. Long testified:

> [A]t that time, [Moss Street] was a pretty hot area. We were doing reversal, sting reversals, the vice unit was . . . [investigating] drugs and like I said there was a lot of traffic in that area. There were complaints of traffic in that area being very heavy and people speeding, people driving around with no driver's license . . . . [The roadblock] was one of the procedures that I chose to try to [quell] some of the trouble we were having on Moss Street.

Thus, the purpose for conducting the roadblock at Moss Street deviated from the city's stated purpose in General Order 3-31 of enforcing driver's license and vehicle registration laws.

Furthermore, no evidence established that a roadblock is an effective or legitimate enforcement measure which can be used or is designed to detect the crimes that were being reported at Moss Street. See Department of State Police v. Sitz, 496 U.S. 444, 454 (1990). Although Lieutenant Long mentioned "citizen concerns" about "people driving without licenses or on suspended licenses," he testified that he authorized the Moss Street roadblock in response to citizen complaints about drugs, speeders, and traffic congestion associated with the drug traffic. The record contains no evidence establishing how officers at a properly conducted roadblock checking licensing and registration can legitimately detect drugs, speeders, or reduce

13

traffic congestion.  Long ordered that the roadblock be established on Moss Street in order to show a police presence in the area and to deter criminal conduct, reduce traffic flow, control speeding drivers, and identify unlicensed drivers. Long's admitted primary concern was "anyone . . . violating any laws."  None of these purposes are articulated in the city's plan as reasons for conducting a roadblock.

The balancing test announced in Brown v. Texas and confirmed in Sitz requires that a reviewing court look at the public or governmental interest being addressed by a checkpoint or roadblock and "the degree to which the seizure advances the public interest."  443 U.S. 47, 51 (1979).  Roadblocks or checkpoints, such as the one here, that are established in whole or in part for purposes of combatting drug-related crimes, reducing traffic flow and controlling speeding drivers are not reasonable measures, in my opinion, to detect these types of offenses.  A roadblock may discourage such conduct in the area by providing a general police presence that serves as a deterrent; however, when balanced against the intrusion on individual Fourth Amendment rights, these purposes do not justify the roadblock. See United States v. Morales-Zamora, 974 F.2d 149, 151-52 (10th Cir. 1992) (holding that traffic checking detail was an impermissible pretextual stop to search for drugs); Taylor v. United States, 595 A.2d 1007, 1009 (D.C.App. 1991) (finding that alleviation of traffic congestion is not a purpose shown to be

14

furthered by a roadblock); Galberth v. United States, 590 A.2d 990, 997-98 (D.C.App. 1991) (holding that government's general deterrence interest does not outweigh seized individual's liberty interest when primary purpose of roadblock is general law enforcement); Meeks v. State, 692 S.W.2d 504, 508 (Tex. Crim. App. 1985) (holding roadblock detention illegal when purpose was to "enforce all the laws"); cf. United States v. McFayden, 865 F.2d 1306, 1312 (D.C.Cir. 1989) (acknowledging that if a roadblock's principal purpose is the detection of crimes unrelated to licensing, it could be a violation of the Fourth Amendment).  But see State v. Damask, 936 S.W.2d 565, 571 (Mo. 1996) (en banc) (holding that state may validly conduct a checkpoint to apprehend drug traffickers); State v. Everson, 474 N.W.2d 695, 701 (N.D. 1991) (same).

Here, the Commonwealth failed to establish the required nexus between the public concerns about speeding and drug-related crimes and the use of a roadblock and its effectiveness to combat those problems.  Although a roadblock necessarily slows traffic, it is not a practice that will, when lawfully executed, effectively and objectively detect and apprehend speeders. Similarly, the public's concern about drug trafficking at Moss Street is not furthered by a roadblock that permits the state, in the exercise of its police powers, to check for licensing and registration violations.  Without the authority to search the vehicle or its occupants, a roadblock is not an effective measure

15

to combat drug-related crimes.

                              II.

    We previously have held that when the police have adopted a plan for conducting a roadblock, an officer in the field does not have the discretion to deviate from the plan.  See Brown v. Commonwealth, 20 Va. App. 21, 25, 454 S.E.2d 758, 759 (1995). "To allow the [police] to do anything short of complying in full with [their] own guidelines would inject an element of discretion into the [checkpoint] procedures and thus undercut the very foundation upon which the [checkpoint] seizure is constitutionally justified."  Id. (quoting Commonwealth v. Anderson, 547 N.E.2d 1134, 1137-38 (1989)).  Objective guidelines provide the safeguards that ensure the "reasonableness" of roadblock seizures.  Without objective guidelines, the seizures would "'lack the usual probable cause or individualized suspicion requirements [that] ordinarily safeguard citizens from arbitrary government intrusion."  Id. at 25-26, 454 S.E.2d at 760.  For this reason, "the [safest] course is to require the Commonwealth to follow its own rules.'"  Id. at 25-26, 454 S.E.2d at 760.

    The majority ignores Brown v. Commonwealth and holds that the deviation from the objective guidelines adopted in General Order 3-31 was not an error of constitutional proportion. However, in my opinion, the deviation from General Order 3-31, even though not done at the discretion of an officer in the field, renders the roadblock conducted on Moss Street

                              16

constitutionally impermissible. The Moss Street location was not a pre-approved site in the plan. Furthermore, the plan contained no provision or procedure whereby a supervisor, under given conditions, such as traffic safety, could authorize a traffic checking roadblock at an alternate location or a site not pre-approved in the plan.[1] Thus, the Martinsville police did not follow their own guidelines for establishing a traffic checking roadblock.

Preventing an officer in the field from making random stops or exercising unfettered discretion in seizing citizens without probable cause at a roadblock is the primary safeguard that must be assured before the government can be permitted to infringe upon the citizen's right to privacy, even to a limited degree and in limited circumstances.[2] See Galberth, 590 A.2d at 996 ("Subjecting every occupant of a motor vehicle to a seizure at the 'unbridled discretion of law enforcement officials' involve[s] the 'kind of standardless and unconstrained discretion [which] is the evil the Court had discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.'") (quoting

---

[1]Although General Order 3-31 grants the police supervisors discretion to choose an alternate location for DUI/sobriety checkpoints for safety considerations, it does not give the supervisors any discretion in site selection for traffic checking details.

[2]The field officer's conduct in such cases would not be valid simply because the stops were authorized by a supervisor.

<u>Delaware v. Prouse</u>, 440 U.S. 648, 661 (1979)).  One of the safeguards that protects the public from law enforcement officers indiscriminately utilizing a checkpoint or roadblock to target one or more persons to be stopped without reasonable suspicion or probable cause or for general law enforcement purposes is the requirement that the policing authorities delineate a plan composed of neutral criteria that utilizes objective, nondiscretionary procedures.  <u>See</u> <u>Simmons v. Commonwealth</u>, 238 Va. 200, 203, 380 S.E.2d 656, 659 (1989).

Allowing the Martinsville police to locate a traffic checking roadblock at an unapproved site on an <u>ad</u> <u>hoc</u> basis in response to individual complaints or a particular problem constitutes the very "unfettered discretion" that a plan is intended to avoid.  The protection that will normally be afforded by a supervisor approving a deviation from a plan, rather than allowing a field officer to exercise such discretion, is to assure that the plan continues to be based on objective, neutral criteria.  Here, the supervisor's decision did not protect against an abuse of discretion in deciding where to locate the roadblock.  Contrary to the majority's assertion, the evidence proved that a supervisory officer in charge of criminal investigations, rather than a field officer, exercised his unfettered discretion to deviate from the plan and to locate the roadblock on Moss Street in response to a citizen's complaints regarding drug trafficking, speeding, and individuals driving

18

without licenses.  The roadblock that Long authorized on Moss Street was designed to target individuals observed by one or several citizens when the officers had no articulable, reasonable suspicion or probable cause to stop those individuals.  The supervision that Long exercised did not give the assurance that the location or purpose of the roadblock was based on objective criteria or that the roadblock furthered a legitimate governmental interest.  I see no meaningful distinction between a supervisor exercising his unfettered discretion to relocate a roadblock based, not upon neutral and objective criteria, but upon complaints targeting certain individuals, and a field officer doing the same.[3]  This type of "standardless and unconstrained discretion," exercised either by the supervisor or the field officer, in my view, violates the Fourth Amendment protections against stopping and detaining private citizens without probable cause or reasonable suspicion of criminal activity.

---

[3]I do not suggest that a modification of a locality's plan to add pre-approved sites based upon citizen complaints is impermissible as long as appropriate procedures are used to amend the plan and the amendment of the plan is motivated by the public interest and not by a desire to stop and detain a certain individual or group of individuals without probable cause or reasonable suspicion.