# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Kenneth O. Morris

### Case No. 98-253

Commonwealth of Virginia

v.

Michael Pickrall

### Case No. 98-254

### February 11, 1999

BY JUDGE EDWARD L. HOGSHIRE

These two actions have been consolidated for the purposes of a suppression motion. After reviewing the briefs submitted by the parties and listening to oral arguments, the Court concludes that the motion should be granted.

*Facts*

On two different nights in April 1998, the Defendants were each stopped at a sobriety checkpoint roadblock in the City of Charlottesville. The Defendants now move to suppress any evidence obtained during those stops as violative of the Fourth Amendment, applicable to the states through the Fourteenth Amendment.

The City of Charlottesville conducts periodic roadblocks in an effort to "reduce the number of alcohol-related motor vehicle accidents." *Procedural Manual: Charlottesville Driver's License & Sobriety Checkpoint Program* (hereinafter "Manual"). Police officers are required to follow the instructions outlined in the Manual. The Manual lists twenty pre-approved sobriety checkpoint sites in the City of Charlottesville. It also delineates guidelines for the officers conducting the roadblock, such as the number of officers required and what to do upon encountering a motorist under the influence of alcohol or drugs. *See Stipulation of Facts* (January 12, 1999). The Manual further provides that there will be a pre-determined geographical point at each site, so that when traffic backs up to that point, the supervising officer may wave traffic through until it clears before resuming the roadblock. *Manual,* Article V.

At the roadblocks where the Defendants were stopped, Sgt. Ronnie Roberts was the supervisor who selected the date, time, and location of the roadblocks from among the pre-approved list of twenty. *Stipulation.* Sgt. Roberts was also the officer in charge of the operation of the checkpoints, and he went to the field and made supervisory decisions at every checkpoint. *Id.* In his capacity as field supervisor, Sgt. Roberts exercised discretion in deciding whether or not to wave traffic through the pre-determined geographical point at the locations.

## Questions Presented

(1) Is it impermissible for the officer who selects the checkpoint site to act also as a field supervisor for the same roadblock?

(2) Does Charlottesville's Manual vest unbridled discretion in the field supervisor?

## Discussion of Authorities

In *Lowe v. Commonwealth,* 230 Va. 346 (1985), *cert. denied,* 475 U.S. 1084 (1986), the Virginia Supreme Court upheld the validity of roadblocks whose purpose was to reduce drunk driving. After considering key Supreme Court cases, including *Delaware v. Prouse,* 440 U.S. 648 (1979), and *Brown v. Texas,* 443 U.S. 47 (1979), the Virginia Supreme Court adopted the *Brown* test:

There must be a weighing of (1) the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty. The Court, in *Brown*, noted that a "central concern" in balancing the foregoing competing considerations has been to make certain that "an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field."

*Lowe*, 230 Va. at 350 (citations omitted).

The Court in *Lowe* proceeded to scrutinize the roadblock in question. Testimony indicated that city officials considered the law on the subject, the safety of motorists, and the safety of police before implementing the plan. Police officers who would conduct the roadblock were then given twenty-four hours of training and a procedural manual. The Court emphasized: "The officers at the checkpoint had no discretion regarding which vehicles to stop; every southbound vehicle was halted." *Id.* at 352. In upholding the validity of Charlottesville's roadblock, the Court concluded: "The Charlottesville system is safe and objective in its operation, employs neutral criteria, and does not involve standardless, unbridled discretion by the police officer in the field, which was condemned in *Prouse*." *Id.* at 352.

Since the seminal decision in *Lowe*, the Virginia Supreme Court and Court of Appeals have wrestled with the constitutionality of specific roadblocks. These cases hinge on their facts. The Virginia Supreme Court found that a roadblock withstood constitutional scrutiny in *Crandol v. City of Newport News*, 238 Va. 697 (1989), and the Court of Appeals reached similar conclusions in *Sheppard v. Commonwealth*, 25 Va. App. 527 (1997), *aff'd en banc*, 27 Va. App. 319 (1998), and *Crouch v. Commonwealth*, 26 Va. App. 214 (1997). In *Simmons v. Commonwealth*, 238 Va. 200 (1989), however, the Court reached the opposite conclusion, as did the Court of Appeals in *Hall v. Commonwealth*, 12 Va. App. 972 (1991), *Brown v. Commonwealth*, 20 Va. App. 21 (1995), and *Thomas v. Commonwealth*, 22 Va. App. 735 (1996). Although these cases are not entirely consistent, an examination of the facts involved and an analysis of the corresponding holdings leads to the conclusion that it is improper for the same officer who selects the roadblock site to also serve as a supervising field officer for that roadblock.

In *Crandol*, each vehicle was stopped, and the Court stressed the fact that "there was an advance determination by administrative officials as to the time and place for the roadblock." *Crandol*, 238 Va. at 701. It distinguished

*Simmons* based on the latter finding. *Id.* The Court did not, however, say anything about those same officials also conducting the roadblock.

The Court of Appeals in *Sheppard* upheld a roadblock despite an officer's deviation from the list of approved sites. The Court found that the plan satisfied all of the requirements in *Lowe* and that the sole claim for deficiency was the selection of a site that was not pre-approved. The Court held that such a deviation was not "of sufficient significance to render the checkpoint unreasonable and constitutionally impermissible." *Sheppard*, 25 Va. App. at 532. The Court, however, was careful to point out:

> Although Lieutenant Long selected the site, *he did not participate in conducting the checkpoint.* He was not an officer in the field. His involvement was altogether in a supervisory or administrative capacity. Thus, in no respect was the establishment or conduct of the checkpoint left to the unbridled discretion of field officers.

*Id.* (emphasis added). These facts are thus distinguishable from the matter currently before the Court. In fact, the implication of the Court of Appeals' language is that if Lieutenant Long had also served as a field officer, the result might have been altogether different.

The final case that upheld the constitutionality of a roadblock, *Crouch*, involved an officer who exercised discretion as to the timing of the roadblock but who was required to obtain the approval of his supervisors. The Court agreed with the Commonwealth that the officer's "limited authority to determine the specific time of the roadblock during the designated work week does not constitute unbridled discretion." *Crouch*, 26 Va. App. at 220.

The theme that emerges from the above cases is that some type of division of authority between the officers who select or approve a roadblock and those who actually conduct it is necessary. The Supreme Court's decision in *Simmons* resonates with that theme. The Court noted that "[u]nder the Fourth Amendment, the Commonwealth has the burden of proving the legitimacy of a warrantless search and seizure." *Simmons*, 238 Va. at 204. Based on the facts of the case, the Court held that the Commonwealth had failed to meet its burden:

> The evidence in this case establishes that the decision to establish the roadblock as well as its location and duration was solely within the discretion of the troopers. No advance approval or authorization from any supervisor or superior officer was required to set up the

roadblock. A statement that the troopers followed standard operating procedure in stopping every car is not sufficient to establish that an explicit plan or practice existed regarding roadblock or checkpoint procedures.

*Id.* These facts have an important bearing on the case at hand. Sergeant Roberts selected the date, time, and location of the roadblock and also served as the officer in charge of the roadblock. He "went to the field and made supervisory decisions in the field at every traffic checkpoint." *Stipulation.* There does not appear to be any check on his discretion besides the Manual itself.

The *Hall* opinion also echoes the above theme and supports the finding that it is impermissible for a single officer to perform all of these functions. The Court of Appeals in that case observed that the field officer selected the site of the roadblock from a list of fifty-four pre-approved locations and decided on the time of the roadblock, but it also noted that the officer did not seek approval from a supervisor. Although the procedure was ordained by a plan similar to the one in Charlottesville, the Court concluded that the officer's discretion was too broad: "The record does not show that the conditions which prompted selection of a particular checkpoint at a particular time could not have been communicated to a supervisor with the supervisor making the ultimate selection of the site and time. This procedure would ensure that officers would not have the unbridled authority to activate a particular checkpoint to stop a particular individual." *Hall,* 12 Va. App. at 975-76.

After an examination of the facts of the above cases, it is apparent that the matter before the Court is closer to the *Simmons-Hall* line of cases than the *Crandol-Sheppard-Crouch* line. Even though Sergeant Roberts was required to follow the procedures outlined in the Manual, he alone made all of the key decisions and also supervised the roadblock. Under the *Lowe* analysis, these actions ran afoul of the central concern that "an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Lowe,* 230 Va. at 350. Virginia law and constitutional mandates require that these responsibilities be divided among at least two different people. Accordingly, the evidence against the Defendants must be suppressed.

Based on the above conclusion, the Court need not reach the issue of whether the Manual vests unbridled discretion in the officers by allowing them to "wave" vehicles on, and it declines to do so.

For the above-stated reasons, the Court grants the Defendants' suppression motions.