488

# CIRCUIT COURT OF ALBEMARLE COUNTY

Commonwealth of Virginia

v.

Jed Williams Pearson

June 25, 2004

Case No. CR 03016,825

BY JUDGE EDWARD L. HOGSHIRE

This is an appeal from a conviction in the Albemarle County General District Court for driving under the influence of alcohol, an activity proscribed by Virginia Code § 18.2-266. Defendant argues that the police roadblock was established and conducted in contravention of his Fourth Amendment rights and has filed a motion to suppress evidence gained therefrom. An *ore tenus* hearing on the motion was held on May 28, 2004, wherein exhibits and testimony were admitted into evidence. Both parties have filed briefs relating to the motion. For the reasons set forth below, the Court grants the motion to suppress.

## Statement of Facts

The facts of this case are not in dispute. Early in the morning of July 6, 2003, Jed Williams Pearson was stopped on Ivy Road by a roadblock conducted by the Albemarle County Police. The roadblock was a sobriety checkpoint established under *Albemarle County Police Department General Order No. 4-6, Subject: Traffic/Sobriety Checkpoints, effective September 28, 2001.* (Comm. Ex. 1, the "Albemarle Plan.") Defendant was stopped and

questioned at the checkpoint by Officer T. A. Rourke, who arrested him for driving under the influence.

In January 2003, six months prior to Defendant's arrest, Corporal G. D. Fink was designated by the Field Operations Bureau Captain to select six sites from a list of fourteen sites approved as sobriety checkpoints. Corporal Fink chose six sites to be activated on certain nights throughout the year. He was also the checkpoint supervisor on the night of July 5-6, 2003, at the Ivy Road location.

The Albemarle Plan allows the Field Operations Bureau Captain to designate an individual to select sites and dates for sobriety checkpoints. (Albemarle Plan III(A)(1)(a).) There are no restrictions on the identity or rank of this designee. *Id.* Once the sites are selected, they are forwarded to the officers who will serve as checkpoint supervisors. (Albemarle Plan III(A)(1)(c).) There are no restrictions on the identity or rank of the checkpoint supervisor. *Id.* The Albemarle Plan provides that checkpoints will be operated for no less than thirty minutes under normal conditions. (*Id.* at III(E)(1).) It does not set forth an upper time limit. The Albemarle Plan gives the checkpoint supervisor the discretion to move the checkpoint to a pre-designated alternative site or alternative date when the circumstances so require. (*Id.* at III(A)(3).) Circumstances may include hazardous road conditions, changes in traffic flow, weather-related problems, and insufficient staffing. Should the supervisor choose to relocate the site, the Safety-Sobriety Checkpoint Activity Report must reflect the reason for the move. *Id.*

## Issue

Whether the Albemarle Plan appropriately delineates the limits of police discretion in operating the checkpoint such that the stop of the Defendant was reasonable under the Fourth Amendment.

## Analysis

Any analysis of the constitutional validity of a plan for conducting a sobriety checkpoint must focus on the degree of police discretion allowed. It is well established in Virginia that "to ensure that an individual's expectation of privacy is not subjected to arbitrary invasion solely at the unfettered discretion of police officers in the field, seizures at roadblocks must be carried out pursuant to plans embodying explicit, neutral limitations on the conduct of the individual officer." *Brown v. Commonwealth*, 20 Va.

App. 21, 24 (1995) (quoting *Hall v. Commonwealth*, 12 Va. App. 972, 973 (1991)); *see Simmons v. Commonwealth*, 238 Va. 200, 202-03 (1989); *Crandol v. City of Newport News*, 238 Va. 697 (1989).

The Virginia Supreme Court has evaluated the constitutionality of the City of Charlottesville's *Procedural Manual: Charlottesville Driver's License and Sobriety Checkpoint Program.* (Def. Ex. 1, *Lowe v. Commonwealth*, 230 Va. 346 (1985), *cert. denied*, 475 U.S. 1084 (1986), the "Charlottesville Plan.") Reviewing the United States Supreme Court cases *Delaware v. Prouse*, 440 U.S. 648 (1979), and *Brown v. Texas*, 443 U.S. 47 (1979), the Virginia Supreme Court adopted the *Brown v. Texas* balancing test in *Lowe v. Commonwealth*:

> Balancing the State's strong interest in protecting the public from the grave risk presented by drunk drivers, against the minimal inconvenience caused motorists approaching the roadblock, we hold that the action of the police in this case was not an impermissible infringement upon defendant's reasonable expectation of privacy. The Charlottesville system is safe and objective in its operation, employs neutral criteria, and does not involve standardless, unbridled discretion by the police officer in the field, which was condemned in *Prouse*.

*Lowe*, 230 Va. at 352.

The Albemarle Plan at issue here closely resembles the Charlottesville Plan reviewed in *Lowe*. (*Compare* Albemarle Plan *with* Charlottesville Plan.) To the extent that the Albemarle Plan is the same as the plan in *Lowe*, *Lowe* affirms its constitutionality. However, it differs in several key aspects. "In order to determine whether the discretion was impermissibly broad, [the Court] consider[s] what an officer *might* do within the guidelines," not necessarily what was done in this particular situation. *Hall v. Commonwealth*, 12 Va. App. 972, 975 (1991) (emphasis added).

Under both plans, a supervisor makes decisions at the checkpoint site. Under the Charlottesville Plan, the Field Supervisor must hold the rank of Sergeant or above. (Charlottesville Plan III(C).) The Albemarle Plan contains no such limitation. In *Raymond v. Commonwealth*, 17 Va. App. 64, 67 (1993), the Court of Appeals noted that the fact that the creator of the State Police's plan served as supervisor at the checkpoint does not render the checkpoint unconstitutional. There, however, the creator of the plan was a First Sergeant. *Id.* at 66. *Raymond* and *Lowe* can be distinguished on this point because the Albemarle Plan contains no such limitation and thus

leaves open the possibility that a patrol officer could serve as checkpoint supervisor once he or she meets the other qualifications for working at a checkpoint. (*See* Albemarle Plan III(C)(3).) An implicit assumption made in *Lowe* and *Raymond* was that the checkpoint supervisor's actions were subject to lesser, if not zero, scrutiny under the "unbridled discretion" test. In *Sheppard v. Commonwealth*, 25 Va. App. 527, 532 (1997), *aff'd en banc*, 27 Va. App. 319 (1998), the court upheld the actions of a supervisory officer who chose the site, stating, "Although Lieutenant Long selected the site, he did not participate in conducting the checkpoint. He was not an officer in the field." It follows that one who actually participates in conducting the checkpoint is considered an "officer in the field." The Court will review the Albemarle Plan in light of its failure to exclude rank-and-file officers from the supervisory position of checkpoint supervisor and will therefore consider the checkpoint supervisor to be another "officer in the field."

Defendant argues that the fact that sites and dates may be chosen by a designee of the Field Operations Bureau Captain creates the possibility that the designee may be an officer stopping vehicles at the checkpoint or the checkpoint supervisor. This Court has previously ruled "that it is improper for the same officer who selects the roadblock site to also serve as a supervising field officer for that roadblock." *Commonwealth v. Morris; Commonwealth v. Pickrall*, 48 Va. Cir. 179, 181 (1999) (consolidated for decision) (holding Charlottesville Plan then in effect unconstitutional). That decision focused on the requirement that there be a "division of authority between the officers who select or approve a roadblock and those who actually conduct it." *Id.* at 182. The situation here is analogous to the facts of *Morris*. Here, Corporal Fink chose sites and dates as the designee of the Field Operations Bureau Captain. He was also on duty as the checkpoint supervisor, at the site he had chosen, on the night that Defendant was arrested. The Albemarle Plan provides only that "All site, date, alternative site, and alternative date selections will be forwarded, *in writing*, to the checkpoint supervisor." (Albemarle Plan III(A)(1)(c), emphasis in original.) No approval from a superior is required even when the designee is the same individual as the checkpoint supervisor. The Albemarle Plan required only that Corporal Fink choose the sites and forward them in writing *to himself* and the other checkpoint supervisors. The division of authority is conspicuously absent.

The Charlottesville Plan sets forth that every checkpoint date will have a primary and secondary site predetermined. (Charlottesville Plan I(C).) If "for some reason" the primary site cannot be used effectively, the supervisor may move it to the secondary location. *Id.* Under the Albemarle Plan, the Field Operations Bureau Captain or his designee pre-selects the site,

alternative site, date, and alternative date for the checkpoint. (Albemarle Plan III(A)(1)(a).) The Albemarle Plan thus presents additional options to the checkpoint supervisor. The supervisor may move from the designated site and date to either the alternative site or alternative date "when circumstances require it." (*Id.* at III(A)(3)(a).) The circumstances "may include, but are not limited to: hazardous road conditions and change of traffic flow, weather-related problems, [or] insufficient staffing." (*Id.* at III(A)(3)(b).) Because this list is not exhaustive, the Albemarle checkpoint supervisor carries the same amount of discretion regarding the initial decision to move the site as under the Charlottesville Plan in *Lowe.*[1] If the alternative site is used, the Albemarle Plan provides that the supervisor must document the reason in his Activity Report. (*Id.* at III(A)(3)(c).)

Defendant argues that the Albemarle Plan does not specify a time during which the roadblock is to be erected. The Albemarle Plan does not explicitly state or even suggest a time of day at which the checkpoint will commence. No reference to time or duration is made other than a directive that checkpoints will operate for at least thirty minutes under normal conditions.[2] (*Id.* at III(E)(1).) No upper limit is specified. *Id.* The Charlottesville Plan, by contrast, specified that the checkpoints will be erected "primarily 10:00 p.m. to 4:00 a.m. on Friday and Saturday nights," but left open an option for other times and days depending on "special events." (Charlottesville Plan III(A).) The Charlottesville Plan gave no minimum or maximum duration other than the six hour window, but left opening and closing the checkpoint to the discretion of the supervisor. (*Id.* at V(A).) The Virginia State Police plan sets an upper limit of two hours as the duration of a checkpoint. *See Wesley v. Commonwealth,* 37 Va. App. 128, 134 (2001) (holding the discretion to operate a checkpoint for one hour was permissible because the duration fell between the thirty minute minimum and the two hour maximum); *Crouch v. Commonwealth,* 26 Va. App. 214, 220 (1997) (noting two hour limit with approval). Under the provisions of the Albemarle Plan, "Only the Checkpoint Supervisor will open or close operations at the checkpoint." (Albemarle Plan III(E)(2).) An Albemarle checkpoint supervisor, then, has the authority to keep a checkpoint open indefinitely, apparently leaving his superiors without recourse.

---

[1] It is unclear whether the Albemarle Plan allows the checkpoint supervisor to move the checkpoint from the primary site and date to the alternative site on the alternative date without any attempt to use the alternative site on the primary date or the primary site on the alternative date.

[2] The Albemarle Plan is silent as to suggested operating hours, which individuals are authorized to determine operating hours, and what procedures are to be followed in making the decision.

In *Crouch,* a Virginia State Trooper was instructed to run a checkpoint at a specific site "some time during that work week." *Crouch,* 26 Va. App. at 216. The Trooper determined the appropriate time and received verbal approval from a superior before setting up the checkpoint. The Court of Appeals found the plan constitutional because, although the trooper could designate the time of the checkpoint, "he had no discretion to decide the location of the assigned roadblock, and he was required to obtain approval from a supervisor before he began stopping vehicles." *Id.* at 219-20. This did not amount to "unbridled discretion" on the part of the officer. *Id.* at 220. In *Palmer v. Commonwealth,* 36 Va. App. 169 (2001), the facts differ from *Crouch* in that the trooper selected the time and the site, albeit from a pre-selected list of approved sites. His site and time selection was then approved by a "supervisor who was not part of the detail." *Id.* at 220. The Court of Appeals found this to be constitutionally permissible.

It should be noted, however, that a Fourth Amendment violation may still occur when an officer's discretion is not totally "unbridled" or "unfettered." *Hall v. Commonwealth,* 12 Va. App. 972, 975 (1991). In *Hall,* the officer chose the time and location of a checkpoint from a list of fifty-four pre-approved locations and then conducted the checkpoint. The Court of Appeals noted that the choice of fifty-four pre-approved locations in a rural county was not a meaningful limitation. *Id.* at 975. The Court of Appeals held: "Although the plan did contain limitations on the exercise of the police officer's discretion, the broad discretion which the officer had as to the time and location of the checkpoint failed to meet the test in *Delaware v. Prouse.*" *Id.* at 976. The checkpoint was unconstitutional "based on the fact that the checkpoint was established without seeking and obtaining prior approval from a supervisor and 'unnecessarily left the individual trooper with such broad discretion that it was subject to abuse'." *Palmer,* 36 Va. App. at 176 (quoting *Hall,* 12 Va. App. at 975-76). The outcome in each of these cases turns on whether approval was obtained before the checkpoint began.

Once date and location are selected, under the Albemarle Plan, the checkpoint supervisor appears to have the discretion to determine the time of day it commences and ends because the supervisor is the only individual authorized to open or close the checkpoint. (Albemarle Plan III(E)(2); *see* note 2, *supra.*) This is permissible under *Crouch* and *Palmer.* The supervisor may also move the checkpoint to a pre-designated alternative site without obtaining approval. This is permissible under *Lowe.* However, under the Albemarle Plan, the supervisor may also move the checkpoint to a pre-determined alternative date without approval. In *Hall,* the officer chose the checkpoint date without obtaining approval. *Hall,* 12 Va. App. at 974. This important distinction is the reason that *Hall*'s outcome differs from

*Palmer* and *Crouch*. Here, the alternative date is approved in advance. Nonetheless, once a checkpoint supervisor has closed the checkpoint, there exists no reason why that supervisor cannot obtain permission from his or her superiors to reopen the checkpoint on the alternative date.

Under the Albemarle Plan, the supervisor controls the operation of the checkpoint, including its location, date, and duration. Although a field officer makes these decisions, there exists no requirement that the officer seek permission from or even inform a superior before making a unilateral decision to move, reschedule, or extend the checkpoint.

## Conclusion

The Albemarle Plan grants an impermissible degree of discretion to an officer in the field. Like the plan in *Hall*, the Albemarle Plan does contain some limitations on the exercise of the officer's discretion. Nonetheless, the procedures set forth by the Albemarle Plan allow inappropriate amounts of authority and discretion to fall to the individual officer. The Court finds the following components of the Albemarle Plan create the potential for abuse: the designee or checkpoint supervisor may be a patrol officer; the designee and supervisor may be the same individual; superiors are not required to give final approval to the selection of checkpoint sites and dates; no procedure exists for choosing the time of day a checkpoint commences; no maximum duration is set forth; and the checkpoint supervisor may unilaterally move the checkpoint from date to date. The Albemarle Plan therefore does not meet the requirement that it impose "explicit, neutral limitations on the conduct of the individual officer." A field officer's broad and unchecked discretion under the Albemarle Plan runs afoul of the Fourth Amendment. The Albemarle Plan is therefore unconstitutional.

The Court finds that the Albemarle Plan as implemented in this case violated Defendant's Fourth Amendment rights. Accordingly, the Court grants Defendant's motion to suppress.