# Richmond

## RONALD RAY RAYMOND

v.

## COMMONWEALTH OF VIRGINIA

No. 0552-92-2

Decided September 14, 1993

COUNSEL

Robert G. Cabell, Jr., for appellant.

Marla Lynn Graff, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**MOON, C.J.**—Ronald Ray Raymond, appellant, appeals his driving under the influence conviction in violation of Code § 18.2-266. We affirm and hold that (1) the trial court did not err when admitting the

State Police Sobriety Checkpoint Plan of Powhatan County, and (2) the checkpoint was established and conducted in a constitutionally valid manner.

Appellant was stopped at a sobriety checkpoint on July 20, 1991, in Powhatan County. As a result of that stop, appellant was arrested for driving under the influence and was subsequently convicted. At trial, the court admitted into evidence over appellant's objection the State Police Sobriety Checkpoint Plan of Powhatan County under the business records exception to the hearsay rule. The court also found that the checkpoint plan was constitutional and did not violate the Fourth Amendment.

## I.

Appellant first contends that Commonwealth's exhibit number one should not have been admitted under the officially written statements exception to the hearsay rule because the facts asserted therein were not within the personal knowledge of the recording official.

Commonwealth's exhibit number one is more than one document. The first document is a January 18, 1991, letter from Captain Belsches to First Sergeant Holland, both of the Virginia State Police, approving Holland's proposed updates on the sobriety checkpoint detail.

The remainder of Commonwealth's exhibit number one is the correspondence from Holland to Belsches, dated January 14, 1991, containing lists of potential checkpoint sites and checking details selected by Holland. Holland, a public official, was the author of this correspondence and made the statements in his official capacity as a First Sergeant of the Virginia State Police. Everything asserted in this January 14, 1991 document was within Holland's personal knowledge. Charles E. Friend, *The Law of Evidence in Virginia* § 248 (3d ed. 1988). Thus, we hold that the documents concerning the checkpoint detail were admissible under the officially written statements exception to the hearsay rule.

## II.

Appellant next contends that the checkpoint operation resulted in an unreasonable seizure in violation of the Fourth Amendment of the United States Constitution. Based on our decision in *Hall v.*

*Commonwealth,* 12 Va. App. 972, 406 S.E.2d 674 (1991), we disagree and affirm the trial court's finding.

■ *Hall* stated that "[t]o ensure that an individual's expectation of privacy [under the Fourth Amendment] is not subjected to arbitrary invasion solely at the unfettered discretion of police officers in the field, seizures at roadblocks must be carried out pursuant to plans embodying explicit, neutral limitations on the conduct of the individual officer." *Id.* at 973, 406 S.E.2d at 675. Contrary to appellant's claim, the plan in this case did not violate our holding in *Hall,* and, therefore, was constitutional.

This court in *Hall* held that where a trooper in his sole discretion could choose a checkpoint site from a preselected list of fifty-four sites in Accomack County, at any time during a specified week, the plan "unnecessarily left the individual trooper with such broad discretion that it was subject to abuse." *Id.* at 975, 406 S.E.2d at 676.

The Powhatan County checkpoint was set up in compliance with a structured, pre-approved plan. The site for the checkpoint was one of ten preselected locations chosen by First Sergeant Holland and authorized by Captain Belsches, both of the Virginia State Police. Holland contacted Trooper Fletcher a week before the checking detail, told the trooper that he was assigned to the operation, and provided the trooper with the pre-arranged time and location. Approximately twelve other troopers were assigned to the checking detail on the same shift. All vehicles were stopped pursuant to the explicit procedure. The site was clearly visible from either direction of the road and was marked with cones and flares. Fletcher had no discretion concerning the particulars of the checkpoint. He was required to stop all vehicles during the designated period, chosen by his supervisor, Holland.

Unlike *Hall,* Fletcher did not choose from an extensive list of potential checkpoint sites, nor did he have sole discretion to determine the time for the operation, "based upon work shift, the number of officers available to assist, anticipated traffic, court appearances and other work-related criteria." *Id.* at 974, 406 S.E.2d at 675.

The fact that Holland, the creator of the plan, was present during the stopping of the vehicles does not render the entire checkpoint operation invalid, as appellant would have us hold. To the contrary, our focus is on the actions of the specific trooper who stopped appellant, Trooper Fletcher. As stated above, Fletcher did not exercise his discretion in stopping the appellant's vehicle.

Accordingly, we hold that the checkpoint under these circumstances did not violate the appellant's Fourth Amendment rights because the checkpoint was "carried out pursuant to plans embodying explicit, neutral limitations on the conduct of the individual officer." *Id.* at 973, 406 S.E.2d at 675.

*Affirmed.*

Benton, J., and Fitzpatrick, J., concurred.