## CIRCUIT COURT OF THE CITY OF CLIFTON FORGE

Commonwealth of Virginia

v.

Roger A. Bocook

January 4, 1996

BY JUDGE DUNCAN M. BYRD, JR.

This matter was heard by the Court on January 4, 1996. The defendant has filed a Motion to Suppress the Commonwealth's evidence flowing from the defendant's arrest and charge of driving while intoxicated on April 15, 1995. At issue is the validity of the Clifton Forge licensing checkpoint plan.

*Facts*

The City of Clifton Forge has adopted a licensing checkpoint plan ("plan") which details the operating procedures for conducting a checkpoint for vehicles operating within the city limits. The plan lists eight different sites at which checkpoints may be operated. Three officers are required to be present at a checkpoint, and one must be a supervising officer. Prior to operating a checkpoint, the supervising officer must choose the location of the checkpoint from the eight sites included in the plan. There is no minimum time requirement between a supervising officer's choosing of the checkpoint site and the establishment of the checkpoint.

There is no indication that the supervising officer must be of any graduated rank, or of special training, and, in fact, the supervising officer's regular duty may be that of a patrolman in the field.

The sixth paragraph of the plan states:

> Prior to each checking detail [sic] the supervising officer shall determine the location of the checking detail is [sic] to be operated and the number sequence of vehicles to be checked based upon traffic conditions at the time.

*Issue*

Is the Clifton Forge checkpoint plan constitutional under the Fourth and Fourteenth Amendments of the Federal Constitution and Article I, Section 10, of the Virginia Constitution?

*Analysis*

The Fourth Amendment of the United States Constitution and Article I, Section 10, of the Virginia Constitution are substantially the same, and discussion of the Fourth Amendment can apply equally to the Commonwealth's constitutional provision. *Lowe v. Commonwealth*, 230 Va. 346, 348, n. 1 (1985).

The Fourth and Fourteenth Amendments of the United States Constitution are implicated whenever a car is stopped and its occupants detained because such action constitutes a seizure, even where the purpose is limited and the detention brief. *Delaware v. Prouse*, 440 U.S. 648, 653, 93 S. Ct. 1391, 1396 (1979) (citations omitted).

In order to determine whether checkpoints create unreasonable seizures within the Fourth Amendment, a three prong balancing test applies which requires the "weighing of (1) the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty." *Lowe*, 230 Va. at 350 (*citing Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637 (1979)). The Supreme Court has held that checkpoint stops may satisfy this three-prong test. *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S. Ct. 2482 (1990). Because checkpoints in their design do not require a reasonable and articulable suspicion for a stop, they must be applied according to a plan which contains explicit and neutral limitations on the conduct of the checkpoint officers. *Brown*, 443 U.S. at 51, 99 S. Ct. at 2640; *Crandol v. City of Newport News*, 238 Va. 697, 700 (1989) *citing Lowe*, 230 Va. at 350.

A central concern about seizures is the potential abuse of discretion by officers in the field. Thus, in *Prouse*, the Supreme Court struck down an arrest for possession of marijuana which was based upon a stop by a patrolman who had "observed neither traffic or equipment violations nor any suspicious activity" but considered the stop to be routine. 440 U.S. at 651, 99 S. Ct. 1394. A checkpoint plan that has explicit, neutral limitations "ensure[s] that an individual's expectation of privacy is not subjected to arbitrary invasion solely at the unfettered discretion of police officers in the field." *Hall v. Commonwealth*, 12 Va. App. 972, 973 (1991).

Impermissible discretion, and therefore unreasonable seizure, in regard to the operation of a checkpoint has been found where two officers in the field established a checkpoint without prior direction of their supervisors (*Simmons v. Commonwealth*, 238 Va. 200 (1989)), where an officer in the field had the discretion to choose the time, within the space of a week, and the site from a list of fifty-four pre-determined sites (*Hall*, 12 Va. App. 972), where a checkpoint was moved to a secondary site for reasons of light traffic and lack of arrests, although the plan under which the checkpoint was established allowed for use of the secondary site only when safety considerations made use of the primary site impracticable (*Brown v. Commonwealth*, 20 Va. App. 21 (1995)).

On the other hand, checkpoint stops have been held to be reasonable seizures where the site and time were chosen by a first sergeant of the Virginia State Police who assigned the trooper to the checkpoint a week in advance and where the trooper had no discretion concerning the checkpoint (*Raymond v. Commonwealth*, 17 Va. App. 64 (1993)), where a high-ranking police officer of the City of Charlottesville made a daily assignment of the site and the officers at a checkpoint and the officers at the site had no discretion of which vehicles to stop (*Lowe*, 230 Va. 346), and where officers' discretion is minimized (*Sitz v. Dept. of State Police*, 429 N.W.2d 180 (Mich. App. 1987) *rev'd on other grounds, Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S. Ct. 2481 (1990)).

The Clifton Forge Plan does not sufficiently limit the discretion of the officers in the field to render a checkpoint conducted pursuant to the plan reasonable under the Fourteenth Amendment. The plan must be strictly complied with; otherwise, "an element of discretion [is introduced] and thus undercuts[s] the very foundation upon which the checkpoint seizure is constitutionally justified." *Brown*, 20 Va. App. at 25 (holding that substantial compliance with a checkpoint plan is not reasonable under the Fourteenth Amendment) (*citing Commonwealth v. Anderson*, 547 N.E.2d 1134, 1137-38 (Mass. 1989)). A strict reading of the plan makes it apparent that the supervising officer, who is not required to be of graduated rank, may choose to run a checkpoint at any time at one of eight pre-approved sites, the location being qualified only by "traffic conditions at the time," with no indication of how traffic conditions are to be accounted for in choosing the site. Traffic conditions also are to bear upon the number sequence of cars to be checked, again without indication of how.

The fact that the supervising officer may be an ordinary patrolman places the discretion of choosing the time and place of the checkpoint

entirely within the officer in the field. The danger of this is that a patrolman could stop an individual "by ascertaining at what time that person would travel through a particular [site] and set up a roadblock accordingly." *Hall*, 12 Va. App. at 975. The *Hall* Court found that had the patrolman told a *supervisor* of a proposed checkpoint, if the *"supervisor . . .* ma[de] the ultimate selection of the site and time[,]" then the "officers would not have the unbridled authority to activate a particular checkpoint to stop a particular individual." *Id.*, 12 Va. App. at 975 (emphasis added). It is clear that the *Hall* Court was referring to an officer of graduated rank when it employed the term "supervisor." The lack of limitation on the discretion of the officer in the field in the Clifton Forge plan causes a seizure which operates much as the random patrol stop struck down in *Prouse, supra.*

## Conclusion

Because the Clifton Forge plan fails to adequately curb the discretion of the officers in the field in establishing checkpoints, all seizures pursuant to that plan are unreasonable under the Fourth and Fourteenth Amendments of the United States Constitution and therefore unconstitutional.