COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Richmond, Virginia


JAMES DALE ARCHER

MEMORANDUM OPINION* BY
v.     Record No. 0327-02-2        JUDGE RUDOLPH BUMGARDNER, III
                                             DECEMBER 17, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

John H. Click, Jr. (Blackburn, Conte,
Schilling & Click, P.C., on brief), for
appellant.

Leah A. Darron, Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on
brief), for appellee.


James Dale Archer appeals his conviction of driving under
the influence, Code § 18.2-266. He contends the police
improperly administered the sobriety checkpoint, which rendered
his initial seizure unlawful. We conclude the checkpoint was
constitutional and affirm the conviction.

The Virginia State Police planned to operate a sobriety
checkpoint at the intersection of Nuckols Road and I-295. State
Police Sergeant Kerry L. Stiles filed a written DUI Sobriety
Checkpoint Operational Plan in accordance with the Department of
State Police Traffic Checking Detail, Memo - 1997 - No. 15. The

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

operational plan provided that the officers would screen every vehicle "unless . . . vehicles back up more than 500 feet from the designated checking point. The first alternate method will be to check every 5th vehicle. The second alternate method will be to check every 10th vehicle." If the backups continued, the operations would be ceased until the distance between vehicles exceeded the stopping distance for that speed zone. The Division Supervisor approved the plan.

The checkpoint was set up at night from 8:00 - 11:00 p.m. while a concert was being held at Innsbrook at the Pavilion. Sergeant Stiles was the on-site supervisor for the checkpoint. He ensured that the roadblock was conducted safely for the public and the field officers operating it, and he decided when "to start and stop traffic checking at the detail." Flares and signs for the checkpoint were posted 500 feet from the checkpoint to assist Sergeant Stiles in measuring the traffic backup.

The traffic became extremely heavy when the concert ended. Sudden rushes from traffic lights caused the traffic to back up much farther than 500 feet. When the rushes created such a backup, Sergeant Stiles would order the checkpoint to shut down. He ordered the officers to cease checking cars three times when traffic backed up more than 500 feet.

Sergeant Stiles had "given the go-ahead" to resume operating the checkpoint when Trooper Lail stopped the

defendant.  Trooper Lail was one of the troopers actually stopping vehicles.  When he stopped the defendant, the troopers "were checking every vehicle."  As a result of the stop, Trooper Lail charged the defendant with driving under the influence.

Sergeant Stiles did not proceed in sequence through the alternative methods of checking every fifth car and then every tenth car before ceasing operation of the checkpoint.  He explained, "based on my experience, I know [those methods] would not have worked."  Sergeant Stiles ordered resumption of the checkpoint when "it was safe for us to start checking . . . every vehicle, without having to back up more than 500 feet."  The defendant concedes the checkpoint was suspended for safety reasons but maintains that Sergeant Stiles unlawfully deviated from the approved plan by not employing the alternative methods for clearing traffic.[1]

Sobriety checkpoints are constitutional.  Simmons v. Commonwealth, 238 Va. 200, 203, 380 S.E.2d 656, 658 (1989); Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 455 (1990).  "To ensure that an individual's expectation of privacy is not subjected to arbitrary invasion solely at the unfettered discretion of police officers in the field, seizures at roadblocks must be carried out pursuant to plans embodying

---

[1] The Traffic Checking Detail Memo provides that officers "shall immediately change to the designated alternate screening method . . . once a traffic back-up occurs . . . ."

explicit, neutral limitations on the conduct of the individual officer."  Hall v. Commonwealth, 12 Va. App. 972, 972, 406 S.E.2d 674, 675 (1991).  "The validity of a checkpoint depends upon the amount of discretion remaining with the field officers operating the roadblock."  Crouch v. Commonwealth, 26 Va. App. 214, 218, 494 S.E.2d 144, 146 (1997).

At the time Trooper Lail stopped the defendant, the troopers were checking all cars.  They exercised no discretion in selecting whom to stop, and they were in strict compliance with the plan.  Even if their supervisor had earlier deviated from the plan, that would not render the stop of the defendant unlawful.  At the time of stopping the defendant, the roadblock was being operated with the literal compliance that the defendant demands.

Sergeant Stiles's deviation from the plan did not render the stop impermissible.  Temporarily halting the checkpoint operation was an approved method to clear traffic.  When traffic backed up beyond 500 feet, an approved safety criterion, Sergeant Stiles ordered the troopers to cease screening all vehicles, an approved method.  Sergeant Stiles skipped intermediate methods of screening and stopped operations completely; the one method he knew would work to clear the congestion.  Sergeant Stiles exercised discretion expressly

- 4 -

granted in the plan and the training manual.[2]  His decision was reasonable and necessary given the volume of traffic and the need to ensure officer and public safety.

Sheppard v. Commonwealth, 25 Va. App. 527, 532, 489 S.E.2d 714, 717 (1997), aff'd en banc, 27 Va. App. 319, 498 S.E.2d 464 (1998), approved the operation of a checkpoint even though the supervising officer chose a site not listed in the approved plan.  That officer did not participate in conducting the checkpoint.  He was the supervisor, and the field officers had no discretion in conducting the checkpoint.  The deviation by the supervising officer was not "of sufficient significance to render the checkpoint unreasonable and unconstitutionally impermissible."  Id.  "[O]ur focus is on the actions of the specific trooper who stopped appellant . . . [who] did not exercise his discretion" in doing so.  Raymond v. Commonwealth, 17 Va. App. 64, 66, 435 S.E.2d 151, 153 (1993) (presence of supervisor, who chose site and time, at checkpoint "does not render the entire checkpoint operation invalid").  See also Burns v. Commonwealth, 261 Va. 307, 323, 541 S.E.2d 872, 883, cert. denied, 534 U.S. 1043 (2001) (roadblock carried out pursuant to plan with neutral criteria is constitutional if it "limits the discretion and conduct of the . . . officers

---

[2] The Traffic Checking Detail Memo specifically provides, "Occasional traffic back-ups may be handled by allowing all stopped vehicles to pass through the checkpoint to prevent a traffic hazard, then resuming the specified screening method."

actually stopping vehicles"); Simmons, 238 Va. at 203, 380 S.E.2d at 658.  Cf. Brown v. Commonwealth, 20 Va. App. 21, 454 S.E.2d 758 (1995) (when troopers involved in operating site relocate to pre-approved site for unauthorized reason the seizure is unconstitutional).

In this case, the trooper who actually stopped the defendant did not exercise unfettered discretion.  He did not exercise any discretion.[3]  Trooper Lail began and stopped screening vehicles when Sergeant Stiles ordered him to do so. When the checkpoint was in operation, he followed orders and stopped all vehicles.  The danger denounced in Delaware v. Prouse, 440 U.S. 648, 663 (1979), that field officers would exercise "unbridled" discretion by randomly stopping vehicles, did not exist.  Sergeant Stiles was the supervisor of the troopers actually operating the checkpoint, and he exercised the discretion in implementing the plan.  The troopers who operated the checkpoint exercised no discretion, and the presence of their supervising officer at the site did not render the operation of the checkpoint invalid.  Raymond, 17 Va. App. at 66, 435 S.E.2d at 153.

---

[3] The Traffic Checking Detail Memo provides: "Participating sworn employees should not deviate from the operational plan. Vehicles will not be stopped on a discretionary basis." (Emphasis added).

- 6 -

We conclude the checkpoint was properly planned and executed.  Accordingly, we affirm.

<u>Affirmed.</u>