COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Haley and McClanahan
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.      Record No. 2392-07-3          JUDGE JAMES W. HALEY, JR.
                                                      APRIL 1, 2008

DERRICK ANTOINE HUNT


FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

Benjamin H. Katz, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellant.

(Linette Joy Wells, on brief), for appellee. Appellee submitting on
brief.


The Commonwealth of Virginia ("appellant") appeals the trial court's decision to grant a

pretrial suppression motion filed by Derrick Antoine Hunt ("appellee"). The trial court

suppressed evidence of cocaine that police officers discovered after stopping his vehicle at a

police checkpoint. Appellant argues that the trial court erred in deciding that 1) the police

checkpoint was not established pursuant to a plan embodying explicit, neutral limitations on the

conduct of the police and 2) that the presence of Lieutenant Goodin at the checkpoint in a

supervisory capacity rendered the checkpoint unconstitutional. For the following reasons, we

reverse the trial court's ruling and remand for further proceedings.

FACTS

On December 15, 2006, at the intersection of Fayette Street and Pony Place in the City of

Martinsville, police officers stopped appellee's motor vehicle at a roadblock. The purpose of the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

roadblock was to check the driver's license and motor vehicle registration of every vehicle that passed through the intersection. As a result of his stop at the checkpoint, police discovered the existence of a warrant for appellee's arrest. During a search incident to appellee's arrest on the warrant, the police found a substance they believed was cocaine. Lieutenant K.L. Goodin of the Martinsville Police had no idea who appellee was when he set up the roadblock and was therefore unaware of the existence of the outstanding warrant until after the officers under his supervision stopped appellee's car. The Commonwealth later indicted appellee for possession of cocaine in violation of Code § 18.2-250.

Appellee filed a pretrial motion to suppress the alleged cocaine. He argued that the police found the substance in violation of his constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment. After a hearing, the trial court granted appellee's motion. The only evidence presented at the hearing was the testimony of Lieutenant Goodin. The trial judge made the following findings of fact in a written opinion:

> The evidence at the hearing revealed that on December 15, 2006, Lt. Leon Goodin of the Martinsville Police Department received from his supervisor a memorandum requesting that he set up a roadblock for the purpose of checking licenses and registration no later than 10:00 p.m. on that day. In accordance with a general order concerning roadblocks, Lt. Goodin picked a site, the intersection of Fayette Street and Pony Place, from a list his captain had approved in advance. Lt. Goodin testified that he picked this location for a number of reasons: adequate parking, plenty of site distance, adequate traffic flow, and success in the past at the same location. At 10:37 p.m., Lt. Goodin and six other officers, who were under his supervision, commenced the roadblock[1]; the officers stopped every vehicle. Although he was present at the roadblock, Lt. Goodin did not participate, other than to make supervisory decisions. The roadblock lasted until 11:10 p.m.

---

[1] The record shows the roadblock started at 9:37 p.m., not 10:37 p.m., and that the roadblock took place on Thursday, December 15 in compliance with the Captain's instructions.

The general order concerning roadblocks mentioned by the trial court was never introduced into evidence.  On the third page of the same opinion, the trial court states, "[i]n the case at bar, Lt. Goodin selected the roadblock site from a pre-approved list and decided when to initiate the roadblock, but there was no evidence that he obtained approval of his decision before implementing it."

The transcript of Lieutenant Goodin's testimony comprises ten pages.  In his testimony, Lieutenant Goodin describes the decision to set up the roadblock.

> Q:  Could you advise, please, who initiated the traffic checking detail?
>
> A:  Who initiated it?
>
> Q:  Yes, sir.
>
> A:  I initiated the traffic detail.
>
>        *      *      *      *      *      *      *
>
> Q:  And who made the decision as to what time the traffic detail was going to begin?
>
> A:  The memo that came out from the Captain gave the hours of the detail which was to start no later than 10:00.
>
> Q:  And what date does that memo have on it?
>
> A:  I have no – I don't have the memo.
>
> Q:  Okay, who was the memo written to?
>
> A:  It was a list posted for a traffic checking detail on that date.
>
> Q:  Okay.  And what other details did that list give?
>
> A:  I'm lost, what do you mean?
>
> Q:  What did the memo say?
>
> A:  Pick two sites which I did.  I picked to [sic] traffic checking detail sites for that day.

- 3 -

Q: You picked those?

A: I picked those sites, yes ma'am.

Q: Okay, and were those sites pre-approved sites?

A: Those sites were sent to the Captain for pre-approval, yes, ma'am.

Lieutenant Goodin answered further questions regarding his supervisor's involvement in the decision to establish the roadblock on cross-examination:

Q: Now, isn't it true that you didn't initiate this traffic checkpoint, your Captain, Captain Porter, your supervisor did, isn't that right?

A: That's correct.

Q: And Captain Porter supervises the entire Uniform Division, isn't that correct?

A: Yes, sir, that is correct.

Q: He's the boss?

A: That's right, he's the boss.

Q: And you take your orders directly from him, correct?

A: Yes sir, I do.

Q: And in this instance he sends out a memo, right?

A: A memo, yes, sir, advising that he wants a traffic checking detail at this particular day.

        *       *       *       *       *       *       *

Q: Okay, so based on your experiences, you provided the captain with a list of sites, didn't you?

A: Yes, sir.

Q: Because he asked for a list of sites, didn't he?

A: That's correct.

Q: And he approved that site, didn't he, that you used that night?

- 4 -

A: Yes.

Q: December 15?

A: That's correct. But the decision, I made the decision on what location to go to and when to go to that location.

Q: But Captain Porter had given you prior stamp of approval in regards to the sites that you were giving him, correct?

A: That's correct.

Q: So you had pre-approval from the captain?

A: Yes.

The two sections of testimony quoted above are the only occasions in which the word "pre-approved" or any variation of the word appears in the record before us. Thus, we must assume that the "list his captain had approved in advance," mentioned in the trial court's opinion, included only the two locations Lieutenant Goodin suggested in response to Captain Porter's original memorandum.

The trial court granted appellee's motion to suppress. Relying on Hall v. Commonwealth, 12 Va. App. 972, 406 S.E.2d 674 (1991), the trial court reasoned that the initiation of the roadblock was unconstitutional because, although he selected the location from a list pre-approved by his supervisor, Lieutenant Goodin did not obtain his supervisor's approval for the ultimate site chosen before implementing the roadblock. The Commonwealth appealed the trial court's suppression ruling to this Court.

ANALYSIS

"[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them . . . ." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). We do not dispute the trial court's findings of fact in this case. The trial court found that

Lieutenant Goodin chose the Fayette Street checkpoint location from a pre-approved list. The only evidence supporting the existence of a list of pre-approved checkpoint locations was Lieutenant Goodin's testimony that he suggested two locations to Captain Porter and that Captain Porter approved them. Thus, the trial court is correct that Captain Porter's instructions left Lieutenant Goodin with the discretion to select the ultimate location of the checkpoint. Yet the trial court neglects to mention that the captain's instructions restricted Lieutenant Goodin's choice to one of only two possible locations. As we shall explain, the extremely short length of the pre-approved list in this case calls into question the trial court's reliance on Hall, 12 Va. App. 972, 406 S.E.2d 674.

A police stop of a motor vehicle at a roadblock constitutes a seizure within the meaning of the Fourth Amendment. Lowe v. Commonwealth, 230 Va. 346, 349, 337 S.E.2d 273, 275 (1985). "[T]he Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of the individual officers." Palmer v. Commonwealth, 36 Va. App. 169, 174, 549 S.E.2d 29, 31 (2001) (quoting Brown v. Texas, 443 U.S. 47, 51 (1979)). "The validity of a checkpoint depends upon the amount of discretion remaining with the field officers operating the roadblock. Clearly, roadblocks are constitutional when conducted according to explicitly neutral plans which eliminate the discretion of the operating officers." Crouch v. Commonwealth, 26 Va. App. 214, 218, 494 S.E.2d 144, 146 (1997).

A roadblock may be unconstitutional if field officers have too much discretion over either the operation of the roadblock or the decision to establish the roadblock. The roadblock in this case eliminated the operational discretion of the individual officers assigned to stop the passing vehicles because the police officers followed their orders to stop each and every car that passed

through the intersection. They had no discretion over which vehicles they stopped. See Delaware v. Prouse, 440 U.S. 648, 663 (1979) ("[T]his holding does not preclude [a state] from developing methods for spot checks that . . . do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.").

Even a roadblock that does systematically stop each passing vehicle may be unconstitutional if the decision to establish the roadblock or the roadblock's location and duration were left entirely to the discretion of the operating officers. Simmons v. Commonwealth, 238 Va. 200, 204, 337 S.E.2d 656, 659 (1989). The evil that prior cases governing the decision to establish roadblocks sought to prevent is "an effort to target a specific person or group of people." Sheppard v. Commonwealth, 25 Va. App. 527, 532, 489 S.E.2d 714, 717 (1997).

> While his discretion may have not been totally "unbridled" or "unfettered" because he was limited to conducting the "detail" at one of fifty-four points, we hold the plan unnecessarily left the individual trooper with such broad discretion that it was subject to abuse. In order to determine whether the discretion was impermissibly broad, we consider what an officer might do within the guidelines. Accomack County is not so large that fifty-four checkpoint stops constitute a significant limitation. A police officer who decided to stop a particular person could do so within these guidelines by ascertaining at what time that person would travel through a particular intersection and set up a roadblock accordingly. Also the officer could observe an individual he wishes to stop, overtake and pass the individual's vehicle and activate the checkpoint before the individual approaches.

Hall, 12 Va. App. at 975, 406 S.E.2d at 676.

In Hall, we reversed the defendant's conviction because the field officers had too much discretion over the location and time of the roadblock. Id. Not only did the field officers who stopped the defendant in Hall have the discretion to use any of fifty-four locations, they also had discretion to initiate the roadblock at any time during each week they were assigned to a

"checking detail." Id. at 974, 406 S.E.2d at 675. Hall requires that the field officers' discretion to establish a roadblock as well as their discretion over the roadblock's timing and location must be limited by a neutral plan imposed by their superiors. Such a plan must eliminate the field officers' discretion to use roadblocks to target a specific person or group.

The trial court was correct that Lieutenant Goodin's instructions left him with some discretion over the timing and location of the roadblock in this case. He was restricted to two locations and a single date. The officers in Hall had the power to establish a checkpoint at any of fifty-four locations at any time during the week. Id. Thus, the scope of Lieutenant Goodin's discretion was considerably narrower than the discretion enjoyed by the field officers in Hall. To determine whether these narrower limits on Lieutenant Goodin's discretion pass constitutional muster we consider our decision in Sheppard, 25 Va. App. 527, 489 S.E.2d 714, particularly the opinion's treatment of a deviation from the location designated by a roadblock plan.

In Sheppard, the defendant was stopped at a checkpoint at a location that was not on the police department's list of pre-approved checkpoint locations.

> The officers conducting the Moss Street checkpoint complied with the Martinsville plan in every respect. The issue before us is whether the sole deviation from that plan, the selection by Lieutenant Long of a checkpoint site not included in Schedule A, was of sufficient significance to render the checkpoint unreasonable and constitutionally impermissible. We hold that it did not.
>
> Although Lieutenant Long selected the site, he did not participate in conducting the checkpoint. He was not an officer in the field. His involvement was altogether in a supervisory or administrative capacity. Thus, in no respect, was the establishment or conduct of the checkpoint left to the unbridled discretion of field officers.
>
> Nothing in the record suggests that Lieutenant Long's decision to establish the checkpoint involved, in any way, an effort to target a specific person or a specific group of people. His decision was based on citizen complaints of unlawful activity at the Moss Street location. His decision addressed the unlawful situation, not any person or group of people. His purpose was to quell unlawful

activity and to control a trouble spot, employing neutral criteria. The location of the checkpoint on Moss Street imposed no greater intrusion on the privacy of the general traveling public than would have been imposed had the checkpoint been located at a Schedule A site. Thus, we hold that the mere fact that the Moss Street location was not included in Schedule A, effected a minor, insubstantial deviation from compliance with the Martinsville plan, and did not render the checkpoint constitutionally impermissible.

Sheppard, 25 Va. App. at 532, 489 S.E.2d at 717.

The evidence in this case was that Captain Porter ordered Lieutenant Goodin to establish a roadblock. Captain Porter's memorandum designated the exact date and the approximate time of the roadblock. The memorandum also solicited site suggestions from Lieutenant Goodin, who provided his superior with two sites and received permission for the use of either of the suggested sites. We believe these steps limited the field officers' discretion over the establishment, the location, and the timing of the roadblock such that, "[n]othing in the record suggests that [the] decision to establish the checkpoint involved, in any way, an effort to target a specific person or a specific group of people." Id. In light of Sheppard, we do not believe that the fact that Lieutenant Goodin's instructions allowed him to choose one other possible roadblock site in addition to the Fayette Street location rendered the scope of his discretion unconstitutional. We therefore hold that the trial court erred in concluding that the roadblock in this case was not established pursuant to a plan embodying explicit, neutral limitations on the conduct of the police.

We further hold that the trial court erred in ruling that Lieutenant Goodin's presence at the roadblock violated the Fourth Amendment.

The fact that Holland, the creator of the plan, was present during the stopping of the vehicles does not render the entire checkpoint operation invalid, as appellant would have us hold. To the contrary, our focus is on the actions of the specific trooper who stopped appellant, Trooper Fletcher. As stated above, Fletcher did not exercise his discretion in stopping appellant's vehicle.

- 9 -

Raymond v. Commonwealth, 12 Va. App. 64, 66, 435 S.E.2d 151, 153 (1993). See Sheppard, 12

Va. App. at 532, 489 S.E.2d at 717.

> Although Lieutenant Long selected the site, he did not participate in conducting the checkpoint. He was not an officer in the field. His involvement was altogether in a supervisory or administrative capacity. Thus, in no respect, was the establishment or conduct of the checkpoint left to the unbridled discretion of field officers.

Id. Similarly, Lieutenant Goodin testified he did not participate in stopping the vehicles at the

checkpoint. More importantly, his presence at the roadblock site did not change the fact that the

officers operating the roadblock stopped each and every vehicle that passed the intersection, a

practice which left them without the discretion to decide which vehicles to stop. We see nothing

in the record concerning Lieutenant Goodin's actions at the roadblock site that cast doubt on the

constitutionality of the roadblock.

CONCLUSION

The trial court erred in granting appellee's motion to suppress. This ruling is reversed,

and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.