## CIRCUIT COURT OF TAZEWELL COUNTY

Commonwealth of Virginia

    v.

Howard Titus Kiser

### June 6, 1986

By JUDGE DONALD R. MULLINS

On March 9, 1985, at 6:50 P.M., the defendant, Howard Titus Kiser, was driving his automobile west on U. S. Route 19-460, west of the Town of Tazewell, Tazewell County, Virginia.

He approached a road-check manned by three state troopers, Johnson, Matney and Shell. He was driving at a normal speed, in a normal manner and without any apparent defective equipment. When he came to the road-check he failed to stop. Trooper Matney pursued the defendant and stopped him some distance west of the road-check. At that point, Trooper Matney, following proper procedures, proceeded to arrest Kiser and charged him with driving under the influence of alcohol. A breathalizer test showed Kiser's blood alcohol content to be 0.23. The only reason Trooper Matney stopped Kiser is that Kiser failed to stop at the road-check.

Kiser moved to suppress all evidence obtained by the Commonwealth as a result of the stopping and his detention on the grounds that the stopping and detention were the result of a road-check that was violative of Kiser's constitutional rights under the fourth and fourteenth amendments of the U.S. Constitution and Article I, § 10, of the Virginia Constitution.

The question before the Court is whether the seizure of Kiser was unreasonable under the above mentioned Constitutional provisions.

This court will not repeat in this opinion the Constitutional issues and "Balancing of interests" concepts

since these matters are fully addressed in *Delaware* v. *Prouse*, 440 U.S. 648 (1979), and *Lowe* v. *Commonwealth*, 230 Va. 346 (1985). This case is submitted to this court to interpret the holding in those two cases and the effect of those holdings on this case.

Under the guidelines set forth in *Prouse* and *Lowe*, this court holds that Kiser's seizure was unreasonable.

The evidence of the Commonwealth was that Troopers Matney, Johnson and Shell, upon their own initiative, decided to set up a road-check on the evening in question. They, without any consultation with any supervisory personnel, determined when the check would start; the location of the check; the manner of stopping traffic; the lanes to be stopped; the method of relieving traffic congestion as it occurred; the duration of the check and the personnel to be involved.

The procedure used by the three troopers in this road-check, if it had been pursuant to a written plan adopted by the Department of State Police, would have qualified as a valid plan under *Prouse* and *Lowe, supra.*

The place chosen for the check was safe, the troopers were in uniform, the squad car lights were flashing, it was visible from a safe distance from both directions and it provided a wide area adjacent to the check-point where drivers needing additional checking could be pulled aside. Every car that came through the check was stopped. The only cars let through without checks were done so only to relieve traffic congestion. Once the congestion was relieved the checking of every car resumed. The time and duration of the check were also reasonable.

The only thing lacking was a written definitive plan or procedure *embodying explicit limitations on the conduct or discretion of the officers* setting the road-check up. According to Trooper Matney, the Department had no such plan. His supervisor, Sergeant McPherson, confirms this. Matney testified that he and the other two Troopers had total discretion in every aspect of the road-check. Sergeant McPherson testified that the Department has statistics to show that road-checks and the publicity thereof do help deter traffic violations and the department has general verbally articulated guidelines relating to road-checks but these are mostly concerning safety aspects.

As this court reads the *Prouse* case, that court set forth certain guidelines under which spot checks

would be valid. The underlying basic necessity is that such checks be made pursuant to *previously specified neutral criteria* and do not involve *unconstrained* exercise of discretion. The Virginia court recognized this basic requirement in *Lowe.* That court at page 350 stated, "Consequently, we must examine the city's plan for maintaining this DUI roadblock to determine whether defendant was stopped pursuant to a practice *embodying neutral criteria,"* and at page 352, "The Charlottesville system is safe and objective in its operation, employs neutral criteria and does not involve standardless, unbridled discretion by the police officer in the field, *which was condemned in Prouse."*

Apparently both of these courts feel that this road-check would be valid if the procedure utilized by the three officers in this case had been previously specified [by] written mandatory requirements for every officer in the field.

It is, therefore, incumbent upon not only the Department of State Police, but every law enforcement agency in this Commonwealth that wishes to employ the use of such road-checks, to establish a written definitive procedure, embodying specified neutral criteria, with explicit limitations on the conduct or discretion of the officers involved in such road-checks.

For the foregoing reasons, the motion to suppress the evidence in this case is sustained.