## CIRCUIT COURT OF ALBEMARLE COUNTY

Commonwealth of Virginia

    v.

Bobby Crenshaw

November 10, 1986

By JUDGE E. GERALD TREMBLAY

Because he claims his constitutional rights were violated, the Defendant has moved the Court to suppress the Commonwealth's evidence obtained at a roadblock which resulted in his arrest on a charge of drunk driving.

The facts and circumstances surrounding this challenged roadblock were elicited at a suppression hearing. Four state troopers decided among themselves to set up a license checkpoint near the entrance to a public park. Sergeant Grayson Ward was the highest ranking officer in the group. The troopers were careful to provide adequate visibility of the checkpoint for oncoming drivers. After about fifty minutes of checking all cars to determine if the driver was properly licensed, an officer stopped the defendant's car. When the defendant could not produce his driver's license, he was asked to step out of the vehicle. At that time, the officer noted several signs of intoxication and so administered an alcosensor test. As a result of this test, the trooper arrested Crenshaw.

The facts of this case raise issues of current public concern. The elimination of drunken drivers from our highways is a much-touted and desirable goal. But it must be accomplished through means that protect the integrity of a citizen's constitutional right to be free from unreasonable searches and seizures. A year ago, the Supreme Court of Virginia held that license and sobriety check-

points operated by the Charlottesville police were within the constitutional boundaries laid down by the Fourth and Fourteenth Amendments of the U. S. Constitution and Article I, Section 10, of the Constitution of Virginia. *Lowe* v. *Commonwealth*, 230 Va. 346 (1985). Fashioning its decision from several opinions by the United States Supreme Court, the Virginia court drew from these cases the common theme that police officers in the field must be constrained from exercising " 'unbridled discretion'." *Id.* at 350, quoting *Delaware* v. *Prouse*, 440 U.S. 648, 663 (1979). In applying this criterion to the facts, the Court in *Lowe* approvingly noted the carefully re-searched initiation of the checkpoint program and the training given the officers assigned to that duty. The Court also listed the topics covered in the procedural manual given to those officers. Included in this list of topics were "provisions that a high-ranking police officer make the daily assignment of a previously designat-ed site for operation of a roadblock and that such officer assign the personnel to work a particular roadblock." 230 Va. 351.

Since the Court in *Lowe* did not state which of the recited factors are essential to a constitutionally accept-able roadblock, it could be inferred that all the listed criteria are required. That conclusion need not be reached here, however, for the court is of the opinion that the absence of supervisory approval according to a previously written set of standards of operation removed this road-block from acceptable constitutional boundaries.

At the suppression hearing no evidence was presented that suggested the operation of the roadblock was contrary to the guidelines approved in *Lowe*. Testimony did reveal, however, that there was no specific plan for the road-block. This is the fatal defect. In *Brown* v. *Texas*, 443 U.S. 47 (1979), the Court stated "the Fourth Amendment requires. . . that the seizure must be carried out pursu-ant to a plan embodying explicit, neutral limitations on the conduct of individual officers." Quoted in *Lowe*, 230 Va. at 351. To insure the constitutionally required reasonableness of such roadblock seizures, discretion of field officers must be limited by a written policy as to how and when they may be conducted. Moreover, this written policy must provide that a high-ranking officer direct the actions of field officers who are operating roadblocks.

The existence of such requirement limits discretion in two ways. First, it provides standards of conduct against which the field officer's conduct and operation of a roadblock may be evaluated. Second, it ensures that proposed roadblocks will be reviewed and approved by supervisory officers. The Commonwealth argues that the presence of Sergeant Ward fulfilled the requirement of the necessity of a supervising officer. This assertion is flawed because even though his rank is higher than that of a trooper, the Sergeant was, nevertheless, assigned as a field officer. His approval of the roadblock is insufficient to provide the necessary limitation of discretion.

A second argument put forth by the Commonwealth is that the officers had authority to stop Defendant's car under Virginia Code section 46.1-7(c) which requires operators of vehicles to stop upon command of a police officer to exhibit drivers' licenses. This statute is only parenthetically noted in *Lowe*, for there the Court did not need to directly address the constitutionality of section 46.1-7(c) under *Prouse*. The Charlottesville roadblocks were called "License and Sobriety Checkpoints" by the police. Thus, section 46.1-7(c) could not have been and was not sought as a shelter by the Commonwealth.

In the case at bar, however, the Commonwealth claims the troopers set up a roadblock only checking licenses and that the Defendant was arrested after the officer had probable cause based on Defendant's actions. The Court disagrees with this characterization of the events. The troopers were operating a roadblock, located just a few hundred yards from a public park, which was in effect a license and sobriety checkpoint. Given this *de facto* dual purpose, the checkpoint is not sheltered by section 46.1-7(c) from constitutional examination.

Defendant Crenshaw was arrested at a constitutionally deficient roadblock; therefore, his motion to suppress the evidence obtained at that roadblock is sustained.