COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Russell and Malveaux
Argued by videoconference

PUBLISHED

BLAKE ANDREW MITCHELL, JR.

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
JUNE 8, 2021

v.      Record No. 1976-18-1

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge[1]

Erik A. Mussoni, Assistant Public Defender, for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Blake Andrew Mitchell, Jr. was convicted of possession of cocaine and possession of

hydrocodone. He argues on appeal that the trial court erred in denying his motion to suppress the

evidence underlying his convictions because law enforcement lacked reasonable, articulable

suspicion to stop the vehicle in which he was a passenger. For the following reasons, we

disagree with Mitchell and affirm the judgment of the trial court.

BACKGROUND

"On appeal, we state the facts 'in the light most favorable to the Commonwealth, giving

it the benefit of any reasonable inferences.'" Commonwealth v. White, 293 Va. 411, 413 (2017)

(quoting Evans v. Commonwealth, 290 Va. 277, 280 (2015)). "When considering whether to

affirm the denial of a pretrial suppression motion, an appellate court reviews not only the

---

[1] Judge Banks presided over the plea hearing and entered the sentencing order in this case. The Honorable John W. Brown presided at the hearing on the motion to suppress that is the subject of this appeal.

evidence presented at the pretrial hearing but also the evidence later presented at trial." Hill v. Commonwealth, 297 Va. 804, 808 (2019) (quoting White, 293 Va. at 414).[2] Finally, in conducting our review, "[w]e also presume – even in the absence of specific factual findings – that the trial court resolved all factual ambiguities or inconsistencies in the evidence in favor of the prevailing party and gave that party the benefit of all reasonably debatable inferences from the evidence." Id.

So viewed, the evidence established that, around 1:00 a.m., on October 31, 2017, Officer Shane McCarthy of the Chesapeake Police Department was stopped at a stop sign. A vehicle travelling in the opposite direction passed McCarthy when it turned onto the street on which he was stopped. A streetlight was on the corner, and McCarthy was able to see the driver as the vehicle went by him.

McCarthy decided to "r[u]n the vehicle's tags" and learned that the registered owner of the vehicle was Ikeya Nellun. The report McCarthy received initially noted Nellun was subject to a "possible warrant," the existence of which was confirmed prior to the stop. In addition to identifying Nellun as the owner of the vehicle, the information McCarthy received included a description of Nellun as "a black female, 5'5", weighing 155 pounds." At the suppression hearing, McCarthy testified that "[t]he descriptors matched the driver from what I could see from my vehicle to their vehicle."

Based on his observation of the driver and the report, McCarthy made a U-turn and followed the car for about 100 yards. McCarthy explained that he "did the U-turn based on the warrant being returned in the actual system from DMV." McCarthy "compared the driver to the

---

[2] Although there was not a contested "trial" because Mitchell entered conditional guilty pleas, the parties entered into a written stipulation of facts that was presented to the trial court at the guilty plea hearing. Accordingly, our review considers both the evidence adduced at the suppression hearing and the facts contained in the written stipulation.

registered owner of the vehicle[, and b]ased on that, [he] initiated a traffic stop."[3]  The car

stopped in response to McCarthy's having activated his emergency lights.

McCarthy approached the vehicle and told the driver why he had stopped the car.  The

driver told McCarthy that she was not Nellun, but was Keisha Hogan.  Hogan generally matches

the physical description McCarthy had received regarding Nellun, "a black female, [who is] 5'5"

[tall], weighing 155 pounds."  Hogan, who weighed 150 pounds at the time of the stop, also is "a

black female, [who is] 5'5"" tall.  During his conversation with Hogan, McCarthy observed that

Mitchell, who was a passenger in the front seat, was not wearing a seatbelt.

Officer Barret Ring arrived on the scene to assist McCarthy and questioned Mitchell.

Mitchell initially provided Ring false identifying information.  During their exchange, Ring

observed a pill container hanging from Mitchell's waistband.  Upon learning Mitchell's actual

identity, McCarthy discovered that he was "wanted," and the officers asked him to exit the

vehicle.  Mitchell resisted the officers; he knocked McCarthy's camera off, tried to move past

him, and "made a throwing motion."

When Ring finally was able to secure Mitchell, Ring noticed that only the top of the pill

container remained on Mitchell's waistband.  McCarthy saw the container on the passenger-side

floorboard of the car.  From the pill container, he recovered materials that appeared to be

---

[3] In addition to providing McCarthy a written description of Nellun, the DMV report also supplied a picture of her.  Based on the testimony and the trial court's factual findings, McCarthy received the written description first and initiated the traffic stop after reading that description but before viewing the picture.  Neither the picture nor the footage from McCarthy's body camera nor any other depiction of either Nellun or the driver are available for our review as none are part of the record.  There apparently are sufficient similarities between the driver of the car and the picture of Nellun such that the picture did not eliminate the possibility that Nellun was the driver.  We note, however, that, because McCarthy had not seen the picture when he initiated the seizure of the vehicle, the picture cannot be used to justify the stop.  See Mason v. Commonwealth, 291 Va. 362, 368 (2016) (recognizing that "the facts and circumstances on which the officer relies [to justify a stop] must have been available to him at the moment of the stop, not discovered thereafter").

controlled substances. On the ground where Mitchell had been removed from the vehicle, the officers found a baggie containing what appeared to be cocaine; the bag was not there prior to Mitchell's removal from the car. The top of the pill container later was found in the police car where Mitchell had been sitting. Forensic analysis confirmed that, among other controlled substances, the materials the officers recovered included cocaine and hydrocodone.

Mitchell moved the trial court to suppress the evidence of the drugs. Relying heavily on our unpublished decision in Worley v. Commonwealth, No. 1913-94-2 (Va. Ct. App. Jan. 30, 1996), he contended that the stop of the vehicle violated the Fourth Amendment because the information possessed by McCarthy at the time he initiated the stop did not provide him with reasonable, articulable suspicion that the car's registered owner was the driver of the car.[4] In response, the Commonwealth relied upon our decision in Hoye v. Commonwealth, 18 Va. App. 132 (1994), arguing that, prior to initiating the stop, McCarthy had reasonable, articulable suspicion to initiate the stop because he knew there was a warrant for Nellun, he knew Nellun was the owner of the car, and the driver of the car matched the physical description of Nellun he had received.

McCarthy testified at the suppression hearing. In addition to McCarthy's testimony, the trial court viewed portions of the encounter that were recorded by McCarthy's body camera. Neither party sought to have the video footage marked as an exhibit, and it is not part of the record on appeal.

Based on what was before it, the trial court found that, prior to initiating the stop, McCarthy "had already started the process of punching in information. He got information back showing the warrant, and he got descriptors in that matched what he saw before he made the

_____

[4] Mitchell concedes that the report of the potential warrant for Nellun potentially gave McCarthy reason to stop the car but *only* if he had sufficient reason to believe that Nellun was the driver.

- 4 -

U-turn." "[The officer] saw her, and then he got the descriptors, which matched, and he put the stop on." The trial court found that McCarthy had sufficient "reasonable suspicion based on the specific and articulable facts as to the driver of the car, . . . resembling, sufficiently enough, the person who . . . owned the car . . . ." Consequently, the trial court denied Mitchell's motion to suppress.

His motion to suppress having been denied, Mitchell elected to enter conditional guilty pleas to the two felony charges he faced.[5] In exchange for his pleas, the Commonwealth agreed to ask the trial court to *nolle prosequi* four misdemeanor charges that Mitchell faced.[6] In entering the conditional guilty pleas pursuant to Code § 19.2-254,[7] Mitchell, with the agreement of the Commonwealth and approval of the trial court, "preserv[ed] his right to appeal the [trial c]ourt's prior ruling on his motion to suppress." The trial court accepted Mitchell's pleas, convicted him of one count of possession of cocaine and one count of possession of

---

[5] Mitchell's conditional guilty pleas were entered into pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), which "allows 'criminal defendants who wish to avoid the consequences of a trial to plead guilty by conceding that the evidence is sufficient to convict them, while maintaining that they did not participate in the acts constituting the crimes.'" Ellis v. Commonwealth, 68 Va. App. 706, 708 n.1 (2018) (quoting Carroll v. Commonwealth, 280 Va. 641, 644-45 (2010)). Nevertheless, the effect of the pleas for our purposes is the same as if Mitchell had entered traditional guilty pleas.

[6] The misdemeanor charges stemmed from additional illicit substances that Mitchell possessed on the night in question and his providing false identifying information to the police. In accepting Mitchell's pleas regarding the felony charges, the trial court *nolle prosequied* the four misdemeanor charges.

[7] In pertinent part, Code § 19.2-254 provides:

> With the approval of the court and the consent of the Commonwealth, a defendant may enter a conditional plea of guilty in a misdemeanor or felony case in circuit court, reserving the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

hydrocodone, and sentenced him to a total of ten years imprisonment, with all but one year, five months suspended.

Mitchell appealed to this Court, asserting that the trial court erred in denying his motion to suppress. In a one-judge denial order issued pursuant to Code § 17.1-407(C), a judge of this Court denied the petition for appeal, concluding that Mitchell's argument in his petition was different from the argument he made below and that, in any event, the failure to include the body camera footage considered by the trial court in the record deprived this Court of the ability to review fully and fairly the basis for the trial court's conclusions. See Mitchell v. Commonwealth, No. 1976-18-1 (Va. Ct. App. Sept. 6, 2019).

Although waiving the right to present his argument orally, Mitchell, pursuant to Code § 17.1-407(D), sought review of the denial order by a three-judge panel of this Court. On October 11, 2019, the three-judge panel denied the petition for appeal "[f]or the reason[s] previously stated[.]" Mitchell v. Commonwealth, No. 1976-18-1 (Va. Ct. App. Oct. 11, 2019).

Mitchell then appealed to the Virginia Supreme Court. In an unpublished order, the Supreme Court concluded that Mitchell's trial court arguments were "broad enough" to allow him to make the argument he raised on appeal and that the body camera footage was unnecessary to resolve the issue he raised. Mitchell v. Commonwealth, No. 191464 (Va. May 22, 2019). Accordingly, the Supreme Court reversed the judgment of this Court and directed that our prior orders "be vacated and [that] the case [be] remanded for further consideration in light of the decision of the United States Supreme Court in *Kansas v. Glover*, ___ S. Ct. ___, No. 18-556, 2020 WL 1668283 (U.S. Apr. 6, 2020)[,]" which had been decided while Mitchell's petition for appeal was pending in the Virginia Supreme Court. Id.

On remand in this Court, Mitchell asserts that McCarthy lacked reasonable, articulable suspicion to justify stopping the vehicle in which Mitchell was a passenger. Specifically, he

argues that "[t]he trial court erred in denying [his] Motion to Suppress the evidence obtained as a result of an unlawful seizure" because McCarthy lacked a sufficient factual basis to "believe that the driver of the vehicle was the owner of the vehicle."[8]

## ANALYSIS

### I. Standard of review

"Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Barkley v. Commonwealth, 39 Va. App. 682, 690 (2003) (quoting Yarborough v. Commonwealth, 217 Va. 971, 978 (1977)). Consequently, in challenging the trial court's denial of his motion to suppress, Mitchell "bears the burden of establishing that reversible error occurred." Saal v. Commonwealth, 72 Va. App. 413, 421 (2020) (quoting Mason v. Commonwealth, 291 Va. 362, 367 (2016)).

Whether "evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact . . . ." Merid v. Commonwealth, 72 Va. App. 104, 108-09 (2020) (quoting King v. Commonwealth, 49 Va. App. 717, 721 (2007)); see also Lawson v. Commonwealth, 55 Va. App. 549, 554 (2010) (recognizing that "ultimate questions of reasonable suspicion and probable cause as here presented involve questions of both law and fact" (internal quotation marks and citations omitted)). "When reviewing a denial of a motion to suppress evidence, an appellate court considers the evidence in the light most favorable to the Commonwealth and 'will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence.'" Taylor v. Commonwealth, 70 Va. App. 182, 186 (2019) (quoting Sidney v. Commonwealth, 280 Va. 517, 520 (2010)). "[A]lthough 'the ultimate

---

[8] Mitchell's argument is limited to McCarthy's initial stop of the vehicle. He does not contest on appeal that he actually possessed the illegal drugs or challenge any actions taken by the officers after the initial stop of the vehicle.

question whether [the stop] violated the Fourth Amendment triggers *de novo* scrutiny on appeal, we defer to the trial court's findings of 'historical fact'' unless such findings are 'plainly wrong or devoid of supporting evidence.'" Saal, 72 Va. App. at 421 (quoting Barkley, 39 Va. App. at 689-90). This deferential review of the facts "requires us 'to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" Hill, 297 Va. at 808 (quoting White, 293 Va. at 414).

II. The Fourth Amendment, vehicle stops, and reasonable, articulable suspicion

The Fourth Amendment to the United States Constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The Fourth Amendment is not "a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." Williams v. Commonwealth, 49 Va. App. 439, 447 (2007) (quoting United States v. Sharpe, 470 U.S. 675, 682 (1985)). Indeed, "the ultimate touchstone of the Fourth Amendment is reasonableness." McArthur v. Commonwealth, 72 Va. App. 352, 362 (2020) (quoting Hill, 297 Va. at 822). "With regard to seizures, reasonableness depends largely on the extent of the individual's loss of freedom compared to the officer's level of suspicion of criminality against the individual." Barkley, 39 Va. App. at 691.

"[S]topping a motor vehicle and detaining the operator constitute a 'seizure' within the meaning of the Fourth Amendment[.]" Lowe v. Commonwealth, 230 Va. 346, 349 (1985). The stop "seizes" all occupants of the vehicle. Brendlin v. California, 551 U.S. 249 (2007); see also Heien v. North Carolina, 574 U.S. 54, 60 (2014) ("A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment."). Nevertheless, an officer may stop a vehicle, effectively seizing its occupants, when "there is at least articulable and reasonable suspicion that a motorist is

unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law[.]" Delaware v. Prouse, 440 U.S. 648, 663 (1979); see also Lowe, 230 Va. at 349.

"There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop." Hoye, 18 Va. App. at 134-35. Reasonable, articulable suspicion requires an officer to possess, at the time of the stop, "a particularized and objective basis for suspecting the particular person stopped[.]" Heien, 574 U.S. at 60 (quoting Navarette v. California, 572 U.S. 393, 396 (2014)). "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Bland v. Commonwealth, 66 Va. App. 405, 413 (2016) (citations and internal quotation marks omitted) (quoting Navarette, 572 U.S. at 397). "In other words, '[a] "reasonable suspicion" requires only "some minimal level of objective justification" for making such a stop.'" Id. (alteration in original) (quoting Beasley v. Commonwealth, 60 Va. App. 381, 395 (2012)). The possibility that an officer ultimately may prove to be mistaken or that there may be an innocent explanation for the facts giving rise to the officer's suspicion does not negate, in and of itself, the officer's reasonable, articulable suspicion. Shifflett v. Commonwealth, 58 Va. App. 732, 736 (2011); see also Heien, 574 U.S. at 60 (recognizing that, consistent with the Fourth Amendment, "[t]o be reasonable is not to be perfect"). In reviewing whether an officer possessed reasonable, articulable suspicion sufficient to justify a seizure, a reviewing court must consider "the totality of the circumstances – the whole picture." United States v. Sokolow, 490 U.S. 1, 8 (1989) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).

### III. McCarthy's stop of the vehicle

Mitchell argues that the information McCarthy possessed when he initiated the traffic stop was insufficient to provide a sufficient basis for the stop. Although conceding that the report of an outstanding warrant for Nellun gave McCarthy a sufficient basis for McCarthy to seize Nellun or stop a vehicle in which she was travelling, he argues that the information McCarthy had when he initiated the stop was insufficient for him to form a reasonable belief that Nellun was the driver of the vehicle. Absent such a reasonable belief, he contends the stop of the vehicle violated the Fourth Amendment.

As he did in the trial court, Mitchell relies heavily on our unpublished decision in Worley.[9] In Worley, an officer stopped the truck that Worley was driving because the officer "determined that the owner of the truck had a suspended license[;]" however, the officer had "not determine[d] whether the driver was the owner before stopping the truck." Worley, No. 1913-94-2, at 2. Contrasting it with our decision in Hoye, in which the officer had reason to seize the registered owner of a vehicle and had "confirmed 'that the vehicle's driver matched the description of the registered owner as to gender and approximate height, weight, and hair color[,]'" id. (quoting Hoye, 18 Va. App. at 135), the Worley panel concluded that an officer's knowledge that the registered owner of a vehicle is subject to seizure, without more, does not provide reasonable, articulable suspicion for the officer to stop that vehicle. Specifically, the panel held that

> to hold that a police officer has a reasonable suspicion to conduct
> a Terry stop where the officer has determined only that the
> vehicle's owner has a suspended operator's license would justify
> the indiscriminate stop of every vehicle owned by an individual

---

[9] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Blowe v. Commonwealth, 72 Va. App. 457, 468 n.10 (2020) (quoting Otey v. Commonwealth, 61 Va. App. 346, 350 n.3 (2012)). See also Rule 5A:1(f).

- 10 -

> with a suspended license. The Fourth Amendment does not countenance such an intrusive violation of privacy.

Id. at 4.

The reasoning and rationale underpinning the panel's conclusion in Worley cannot survive the United States Supreme Court's decision in Glover. Much as was the panel of this Court in Worley, the United States Supreme Court in Glover was confronted with "the question whether a police officer violates the Fourth Amendment by initiating an investigative traffic stop after running a vehicle's license plate and learning that the registered owner has a revoked driver's license." Glover, 140 S. Ct. 1183, 1186 (2020). In analyzing the reasonable, articulable suspicion question, Justice Thomas, writing for an eight-justice majority,[10] concluded that an officer's belief that the registered owner is the driver of the car is a "commonsense inference . . . , which provide[s] more than reasonable suspicion to initiate the stop[]" under the Fourth Amendment. Id. at 1188. The high Court emphasized that "[t]he fact that the registered owner of a vehicle is not always the driver of the vehicle does not negate the reasonableness of [the] inference." Id.

Consistent with the reasoning of Glover, McCarthy had sufficient reasonable, articulable suspicion to initiate the stop of the vehicle. Accordingly, the trial court did not err in denying Mitchell's motion to suppress. Furthermore, because it is inconsistent with Glover, our decision in Worley, although never more than mere persuasive authority, is overruled.

In following the rule of decision in Glover, we note that, on its own terms, Glover does not allow an officer to stop a vehicle whose registered owner is subject to a lawful seizure in every instance. The reasonable, articulable suspicion inquiry still requires both officers and courts to consider the totality of the circumstances, and thus, "the presence of additional facts

---

[10] Although Justice Kagan also wrote a concurring opinion in which Justice Ginsburg joined, both Justice Kagan and Justice Ginsburg joined the majority opinion.

might dispel reasonable suspicion" arising from the commonsense inference.  Id. at 1191.  By way of example, the Glover majority noted that "if an officer knows that the registered owner of the vehicle is in his mid-sixties but observes that the driver is in her mid-twenties, then the totality of the circumstances would not 'raise a suspicion that the particular individual being stopped is engaged in wrongdoing.'"  Id. (quoting Cortez, 449 U.S. at 418).  Accordingly, if facts known to an officer negate the commonsense inference that the registered owner is in the car, the fact that the registered owner is subject to seizure does not provide an officer with sufficient reasonable, articulable suspicion to stop the vehicle.[11]

CONCLUSION

Consistent with Glover, McCarthy possessed sufficient reasonable, articulable suspicion to initiate the vehicle stop at issue in this case.  Accordingly, the trial court did not err in denying Mitchell's motion to suppress, and we affirm the judgment of the trial court.

Affirmed.

---

[11] We note that McCarthy had more than just this "commonsense inference" to justify the stop; the information he received prior to initiating the stop confirmed that the driver matched Nellun's physical description regarding race, height, and weight.  See Hoye, 18 Va. App. at 135.